MILLER *v.* YOUNG.

1. TRIAL—RECEPTION OF VERDICT—ABSENCE OF JUDGE—IRREGULARITY—WAIVER.

    The irregularity in the receipt of a verdict in a civil case, in the absence of the trial judge, is waived, where there is no other irregularity or prejudicial incident, and such verdict is rendered within one-half hour from the time the case is submitted by the judge to the jury, and is taken by the clerk with consent of the parties in open court in the customary manner.

2. CONVERSION—EVIDENCE—QUESTION FOR JURY.

    In an action against an agent to recover the proceeds from the sale of sheep belonging to plaintiff by defendant and not accounted for, where plaintiff claimed that a certain number of sheep were intrusted to the agent under an arrangement whereby they were to be let out to double in a term of four years, and, upon return, the increased flock was let out for a similar period, and, with further increase, was sold at the end of the second period by defendant, *held*, that it was a question for the jury whether plaintiff had any interest in the flock.

3. LIMITATION OF ACTIONS—STATUTE OF FRAUDS—CONCEALMENT—CONVERSION.

    Where one owning sheep intrusts them to the care of her agent under an arrangement whereby they are to be let out to double in four years, and, upon the return of double the number of sheep at the expiration of the term, such agent then converts and appropriates them to his own use, concealing the fact from the owner, and deceives the latter into believing that he has let out the increased flock for a similar period and on similar terms, the statute of limitations does not begin to run until discovery of the conversion by the owner, and it is immaterial that the second time the agent lets out some of his own sheep, instead of all of those of such owner, if the owner is kept in ignorance of such fact and is deceived into believing that they are all hers.

4. WITNESSES—CREDIBILITY—QUESTION FOR JURY.

    The credibility of the parties and of their respective witnesses is peculiarly a matter for the jury.

5. CONVERSION—EVIDENCE—SUFFICIENCY—AGENCY.

    In an action by a principal against her agent to recover the proceeds of the sale of sheep of plaintiff, sold by defendant and not accounted for, where plaintiff claimed that a certain number of sheep were intrusted to the agent under an arrangement whereby they were to be let out to double within a certain period, and, upon return, the increased flock was let out on similar terms for a similar period, and, at the end of the second period was, with the further increase, sold by defendant, evidence *held*, sufficient to establish a contract of agency and the interest in the sheep.

Error to Eaton; Smith, J. Submitted January 10, 1917. (Docket No. 76.) Decided May 31, 1917.

Assumpsit by Rosa Miller against Daniel J. Young for money received upon the sale of certain sheep belonging to plaintiff. Judgment for plaintiff. Defendant brings error. Affirmed.

*Joseph B. Hendee* and *Horace S. Maynard,* for appellant.

*Elmer N. Peters,* for appellee.

STEERE, J.  Plaintiff declared in this action on the common counts in assumpsit, filing a bill of particulars of her demand as follows:

"For money received by defendant from Ben Gillett upon the sale of a certain flock of sheep belonging to the plaintiff, and sold by defendant to said Gillett on or about the month of October, A. D. 1910, $318.  Interest thereon from the date of sale to the date of judgment."

Defendant pleaded the general issue, with special notice of the statute of limitations, and payment in full of any and all amounts owing plaintiff "upon said several supposed causes of action."  The case was tried by jury in the circuit court of Eaton county on October 16, 1915, resulting in a verdict and judgment for plaintiff in the sum of $380.94.  Defendant moved for a new trial on numerous grounds, especially urging that the verdict was against the weight of evidence. The motion was denied, and reversal is now sought in this court on 29 assignments of error; the last being that the court erred "in refusing to grant defendant a new trial for the fifteenth reason assigned in defendant's motion for a new trial."

Plaintiff is a single woman of middle age, and sister-in-law of defendant, who, when plaintiff was a child, married her older sister Cora.  Defendant, who is a farmer, testified that he had lived in Eaton county about 57 years, residing since his marriage with his wife upon his farm in Eaton Rapids township.  They had no children.  His father-in-law, Robert Miller, who died in June, 1913, had lived for many years upon, and owned, a small farm not far from that of defendant.  He had six daughters, and during a por-

tion of her girlhood plaintiff lived in the home of defendant as a member of his family, going to school from there for a time. In those days she is shown to have been a favorite with defendant and his wife, who took an interest in her welfare, urged her to attend school, made her presents, etc. She states that defendant then used to call her "his daughter." Between 1895 and 1900 she lived at defendant's home much of the time, after which she was more at her parents' home, or "working out" in different families, but frequently visited and stayed at defendant's, going and coming as she chose, helping defendant's wife when there, apparently welcomed and treated as one of the family on such occasions, until after her father's death, with the exception of one or two intervals, when defendant testified that something took place which did not suit him, and he sent her home to her mother. The two families appear to have generally been on very friendly terms, with no lasting or serious differences, until a disagreement arose, after the death of plaintiff's father, over the disposition of the small farm which he left; some of the children, including plaintiff, wishing to deed their interest in it to their mother, so that she might dispose of it, while others, including defendant's wife, preferred to give her a life estate in it, so that she would keep it for a home. This led to friction, unkindly feeling, and change of attitude towards each other.

Of its culmination, to which he attributes this litigation, defendant testified in part that plaintiff never claimed he owed her for sheep, or made any demand of him, until March 20, 1914, during a family discussion at his home over whether the sisters should deed outright their interest in their father's estate to their mother, which his wife declined to do, and—

"Rosa spoke up, 'Will you deed your interest to me for what Dan owes me?' I says, 'That will be a mighty

small amount she would receive for her interest,' in the presence of Miss Miller and her sister and my wife; she says, 'Don't you owe me for those sheep?' I says, 'No; I don't owe you a nickel, and you know it.' That dropped right there; she said no more until she started to go home. * * * When she started to go home, she stepped up in front of me and said in a low tone, 'If you don't permit Cora to deed the property to ma, I will make it hot for you.' I says, 'Go ahead, I shan't do it.' She went on home."

Plaintiff on her part claimed that her ownership of the sheep and their increase, as let out for her by him, was often discussed between them, recognized by him to her and others, and never denied until this disagreement over her father's estate arose, and he thereafter asserted he owed her nothing.

Upon the trial their respective contentions and proofs upon. the issue involved were in brief as follows:

Plaintiff claimed that in the spring of 1902 defendant gave her three lambs that had been disowned by their mothers and also two runt pigs, which she took to her father's home, where she cared for, fed, and fatted them until the following November, when defendant sold the two pigs for her for the sum of $16, and gave her two more lambs for one of the three, a buck, which he sold to a neighbor, after which he sold her 12 more for the $16 which her pigs brought, making a flock of 16 sheep belonging to her, which he agreed to, and did, let out for her on shares, first letting them to a farmer named Smith, to be doubled in four years, and at the end of the first four years, in the fall of 1906, he received back from this letting 32 sheep, which he then let out for her to one Ben Gillett, to be doubled in four years more; that as the result of such increase she owned 64 sheep in 1910, and defendant told her that he was unable to let them out in that way any longer, and they would have to be sold; that he subsequently sold them for $300, which

he did not then, however, pay to her, nor did she press him for it until after their trouble, when he denied that he owed it to her.

On the other hand, defendant denied that he ever let out any sheep for plaintiff at any time to any person, and claimed that during the summer of 1902 the three lambs in question, which he had given to plaintiff in 1901, were brought back to his farm and were with his own flock, he having agreed to buy them of her in case she did not succeed in letting them out; that he tried to help her do so, and probably spoke to neighbors about it, but they were unsuccessful, and he paid her for them in the fall as he had agreed; that those three sheep were the only ones she ever owned, and he had given her the money received for the two pigs at the time they were sold; that he always kept sheep upon his farm, and did, out of his own flock, let sheep to Smith and Gillett, a transaction in which plaintiff had no interest, and with which she had nothing to do; that in 1907 he heard plaintiff was liable to make him trouble under a claim that he had sheep belonging to her, and in making a settlement with her for work which she had done for him in picking beans, amounting to some $10.06, he proposed, when he paid her, that they settle up all matters in full, so they would know how they stood, and asked that she sign the following receipt, drawn by him, which she did:

"December 4, 1907.
"Received of D. J. Young $15.06 for picking beans, and sheep and other work, in full to date.
"ROSA MILLER."

After which he made her a present of $5.

The testimony introduced by the respective parties upon this issue was submitted to the jury by the court, resulting in a verdict as above stated, and thereafter defendant moved for a new trial, urging numer-

ous alleged errors committed during �8 progress of the trial, and that the verdict was aᵢ ⸱ the weight of evidence.

One of the objections presented against ᴛᴜe verdict in defendant's motion for a new trial, and earnestly urged here, is that the verdict was taken by the clerk of the court in the absence of the presiding judge, and therefore a nullity. That such was the fact is conceded. An affidavit was presented to the trial court by defendant's counsel as to the circumstances of taking the verdict in the absence of the judge and his understanding of the agreement between counsel that this might be done. Touching this matter it is said in the opinion of the trial court overruling defendant's motion:

"There is no dispute as to the fact that the verdict was taken in the absence of the judge. The proofs in this case were closed on Friday afternoon after 4 o'clock. The following day being Saturday, and the court having business that would require his presence at home the afternoon of Saturday, stated to the counsel for parties that unless they would consent that the clerk might take the verdict in the absence of the judge, if it were not reached before his train, due at 11:26 a. m. should leave, he would continue the case until the following Tuesday morning, at which time the court would return. Counsel assented that the clerk might take the verdict, and the argument was then taken up and an evening session was held. The case was resumed the next morning at 8 o'clock. It was given the jury at 11 o'clock, and the judge left for the train. The jury returned a verdict at 11.30. In concluding the charge to the jury, the court said to it as follows:

" 'Now, gentlemen, I will probably not be here when the verdict is returned. I am going to leave on the train. You have heard what was talked last night between counsel and the court, and I simply say to you the clerk will take your verdict; if you should come in before I go away, I will take it myself, or it will be taken in my presence. After you have got

through with the consideration of this case, you will be excused till next Tuesday morning at 9 o'clock.'

"Counsel for defendant was present when the jury were instructed, and when they retired."

Counsel for defendant concede to having consented to what was proposed, and do not question that the facts were as stated by the court, but contend they supposed, or understood, that if the jury agreed a sealed verdict would be given the clerk, to be opened and formally taken in the usual manner on the following Tuesday morning, when court would convene with judge and jury present. It is not claimed anything was said to that effect by court or counsel; neither would the consent of counsel have been necessary to authorize a sealed verdict. We see nothing ambiguous in what was said by the court to the jury in the presence of counsel. On this record the assignment squarely presents the question of whether, in the absence of other disclosed irregularity or prejudicial incident, a verdict in a civil case, rendered within half an hour from the time the case was submitted by the judge to the jury, taken by the clerk in open court in the customary manner, but by consent of parties in the absence of the presiding judge, must be regarded as void and a nullity, because he was not then present in court.

We are not referred to and do not find controlling precedent upon the question in this State, and the authorities are not found uniform in other jurisdictions. Counsel on both sides cite cases supporting their respective contentions. It may be noted in the outset that the course adopted in this case was irregular and unfortunate, a practice liable to result in a mistrial, which we do not wish to be understood as approving. For obvious reasons the presiding judge of the court should be present when the court is in session and its business being transacted. *Bedal* v. *Spurr*, 33 Minn. 207 (22 N. W. 390), which holds,

however, that consent of counsel to the clerk taking a verdict in a civil case in the absence of the judge was equivalent to a waiver of all irregularities in that particular, and he cannot afterwards be heard to object to the verdict on that ground. It has, on the other hand, been held that receiving a verdict is a judicial function, which the court cannot delegate, even by consent of the parties, to a nonjudicial officer. *Willett* v. *Porter,* 42 Ind. 250. This view was at one time adopted by certain of the New York courts, but was subsequently repudiated, or distinguished, in the well-reasoned case of *Dubuc* v. *Lazell,* 182 N. Y. 483 (75 N. E. 401), where it is held that the clerk, in receiving a verdict in the absence of the presiding judge by consent of counsel for both parties in open court, was exercising no strictly judicial function, and the verdict so received by him, though irregular, was not void.

The manner of taking a verdict is a matter of practice. Under the practice of this State it is the duty of the clerk, on return of the jury to render a verdict, to inquire if they have agreed upon a verdict, and, if so, what it is, to receive the verdict, repeat it to the jury, and, if assented to by all, record it. Usually and by proper practice this is done in the presence of the presiding judge, who is not called upon to otherwise participate or exercise any strictly judicial function at that time, unless some motion or matter out of the ordinary arises. This is a civil action between private parties, in which the court had jurisdiction of the subject-matter and of the litigants. In such a case the parties may in many ways waive rights and stipulate as to the conduct of the litigation, which will be binding between themselves, and which, if reasonable, the courts will recognize and enforce. Presumptively, and so far as shown, this verdict was taken and recorded by the clerk at the conclusion of

the trial in the customary manner without any prejudicial circumstances or irregularities, except that the trial judge was not present—a palpable irregularity in practice, which the parties by their consent could and did waive. That contingencies might have arisen in the absence of the trial judge which would give this question a different aspect, and perhaps result in a mistrial, does not render the judgment invalid. Under the circumstances shown by this record, we cannot find that it is void because the verdict was received, with the consent of counsel, by the clerk of the court in the absence of the presiding judge, which was no more under the circumstances than a mere irregularity in practice, which was waived.

Aside from the above, and the contention that the verdict is against the great weight of evidence, defendant's assignments of error are mostly directed against the charge of the court, in which it is urged that the claims and theory of the defense were not fairly submitted to the jury. It is said that, under the issue tendered and testimony given, the only question for the jury, if any, was whether plaintiff owned 16 sheep in 1902, which were let by defendant for her to Smith to double in four years, which were taken over from Smith during that four years by one Rogers to complete the contract, who returned the 32 sheep to defendant in 1906, which 32 sheep were then let for her by defendant to one Gillett to double in four years, at the end of which time, in 1910, the doubled flock, or 64 sheep, were sold by defendant for $300.

Defendant not only denied ever letting any sheep for plaintiff to any one, but produced a written contract between him and Gillett, of October 6, 1906, showing that he then let Gillett 20 black top merino lambs, to be doubled in four years, which he testifies were selected from his own flock, to which he subsequently added 12 breeding ewes from his own flock,

and that all of them were taken over by Gillett some time before Rogers returned those he had. Gillett testified that he dealt with and contracted 32 sheep from defendant, in 1906, that he did not know any one else claimed or had any interest in them, and at the expiration of the letting bought the then 64 sheep from defendant for $300, paying for them one year later, with 6 per cent. interest. This transaction is admitted by defendant. It is claimed that these facts are undisputed, and plaintiff has failed to show defendant let any sheep of hers to Gillett in 1906; that when this action was brought more than six years had expired since Rogers returned the 32 sheep claimed by her, and the court particularly erred in instructing the jury as follows:

"While you might find as a fact that the sheep let to Gillett in 1906 were not the sheep that Smith and Rogers had, yet, should you find that when they were let to Gillett, they were let to him by Mr. Young in the interest of Miss Miller as and for her flock, then she would be entitled to recover."

Plaintiff testified that while she lived at defendant's she kept tab on the sheep more or less; that she knew Gillett, who lived about a quarter of a mile from defendant, got her sheep; that she was not at defendant's place at that time, and had no personal knowledge of the agreement between him and defendant, but understood they were let to Gillett to be doubled in four years; that before the four years were up defendant talked with her about the sheep and the difficulty of letting them out, said "the flock is getting quite large," and when she asked if they could not be let in two bunches replied, "People don't like to take sheep like that any more," and she then consented to their being sold, if he could not let them out; that he subsequently told her he had sold them to Gillett, and she found out from Gillett what he had paid for them. Various

witnesses, mostly neighboring farmers, testified that defendant had at different times offered to let them sheep on shares belonging to "Rosa," or to his "wife's youngest sister," and statements made by him that certain sheep which he had let out belonged to her.

Defendant does not deny that he let out two bunches of sheep for four years each in succession, of the number, at the time, and on the terms stated by plaintiff. His denial, which goes to the foundation of her action and raises the test issue of fact for a jury, is that she had no interest in them. If the 16 sheep first let out and the 32 returned four years later were hers, which he denies, and if he then converted and appropriated them to his own use, concealing the fact from her, and deceived her into believing that he had let out the increased flock to Gillett for four years more upon the same terms as formerly, the statute of limitations would not begin to run against her until she learned of the deception and conversion. The fact, if true, that he let some of his own sheep to Gillett, instead of hers, would not defeat her right to recover, if she was kept in ignorance of it, and led by him to believe they were hers. The court committed no error against defendant in telling the jury that if defendant did in fact let his own sheep instead of hers to Gillett, but in her interest, as and for her flock, she would be entitled to recover.

This case, as we view it, is essentially one of fact —an action in assumpsit, based in effect under the testimony upon a claimed ownership and contract of agency which plaintiff asserts and defendant denies. The subject-matter is a number of sheep which she claims were hers, and handled for her by defendant during a term of years, at the end of which time he sold them with her consent and has not accounted to her for the proceeds. His flat denial of all the essential facts she claims leaves no middle ground in the

controlling issue of this litigation, which is well defined and not difficult for the ordinary jury to understand. The credibility of the respective parties and their witnesses was peculiarly a matter for the jury. The court distinctly charged that the burden of proof rested upon plaintiff, and the verdict should be for defendant, unless she established the facts as she claimed them by a preponderance of evidence. The nature of the controversy, respective claims of the parties, and controlling questions of fact for the jury were fairly stated, and the duty of the jury in the premises pointed out by the court. We find no prejudicial error in the charge, and after an examination of the entire cause cannot conclude that the verdict should be disturbed because against the great weight of evidence, or that it affirmatively appears any error of the court has resulted in a miscarriage of justice.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.