PEOPLE *v.* MOREHOUSE.

1. JURY—CHALLENGE TO ARRAY—TIME.
    First challenge to the array of jurors came too late, where made on motion for new trial some 19 years after conviction of murder in the first degree.

2. CRIMINAL LAW—ABSENCE OF JUDGE FROM COURTROOM DURING TRIAL.
    Absence of the trial judge from the courtroom at any stage of the trial of a criminal case, while the trial is in progress, is utterly inexcusable and deserving of censure.

3. SAME—JUDGE'S ABSENCE FROM COURTROOM DURING TRIAL—PREJUDICE.
    Trial judge's absence from courtroom during progress of trial of first-degree murder charge did not constitute reversible error, where it appears that when the prosecuting attorney

REFERENCES FOR POINTS IN HEADNOTES
[1] Generally as to time to exercise challenges to jury. 31 Am Jur, Jury, § 113.
[2, 3] 53 Am Jur, Trial, § 19.
[4] 20 Am Jur, Evidence, § 313.
[5] 58 Am Jur, Witnesses, § 96.
[5] Disclosure by witness of fact or transaction as waiver of his privilege against self-incrimination in respect of details and particulars which will elucidate it. 147 ALR 255.

in his closing argument to the jury made statements that defendant's attorneys objected to, the judge was either in or entered the courtroom, heard the objection and ruled on it, no dispute arose as to the substance of the prosecutor's remarks, no complaint was then made that the objections could not be made properly or be fairly ruled upon because of the judge's absence at time the remarks were made or that defense counsel indicated that they felt defendant's rights were being prejudiced and a scrutiny of the prosecutor's remarks indicate that while some of them were improper they were not likely to prejudice defendant's rights or influence the jury improperly.

4. Homicide—Intent—Previous Offenses—Self-Defense.

Evidence of fact that defendant was transporting stolen goods at time he killed deputy sheriff and had shortly theretofore committed other crimes *held*, admissible under the circumstances shown, as bearing on defendant's motive, intent and purpose in shooting the deputy, where defendant interposed self-defense, as jury was not limited to defendant's own testimony as to whether or not the deputy had probable cause to believe defendant guilty of a crime justifying an arrest without a warrant and whether or not an arrest was actually being attempted (CL 1948, § 768.27).

5. Same—Cross-Examination of Defendant—Other Offenses—Intent.

Prosecutor's cross-examination of defendant as to crimes he had shortly theretofore committed before killing deputy sheriff was permissible and proper and not a violation of constitutional rights, where defendant had voluntarily taken the stand, had testified as to breaking and entering a hardware store and transporting the stolen goods in his car at time he must have known he was not being subjected to a holdup and that the deputy was an officer attempting to effect an arrest of defendant and an accomplice, as such cross-examination bore upon defendant's intent, purpose and motive in shooting the deputy (CL 1948, § 768.27).

Appeal from Eaton; McDonald (Archie D.), J. Submitted June 15, 1950. (Docket No. 64, Calendar No. 44,007.) Decided December 5, 1950. Certiorari denied by the Supreme Court of the United States April 30, 1951.

James L. Morehouse was convicted of murder in the first degree in 1928. Defendant reviews order denying new trial in 1947. Affirmed.

*John L. Potter* and *George A. Beauchamp,* for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara,* Assistant Attorney General, and *Robert C. Carr,* Prosecuting Attorney, for the people.

DETHMERS, J. Defendant was convicted by a jury in 1928 of murder in the first degree. This is an appeal, upon leave granted, from the trial court's order of August 28, 1947, denying a new trial.

Defendant contends that when it directed the drawing of talesmen in addition to the jurors on the regular panel the trial court erred in limiting such drawing to the townships and cities in the county other than the city in which the alleged crime was committed. Defendant was represented at trial by 3 able attorneys who were present in court and aware of this order when it was made. They did not object. Defendant makes no showing that his rights were in any way prejudiced by the order. He relies in this connection upon *People* v. *Hall,* 48 Mich 482 (42 Am Rep 477), and *People* v. *Gage,* 188 Mich 635, in which challenges to the arrays were made before the juries were sworn. In the instant case the first challenge was made, by the defendant, 19 years after conviction, on motion for new trial. Too late. *People* v. *McArron,* 121 Mich 1; *People* v. *McCrea,* 303 Mich 213.

Defendant now complains of the absence of the trial judge from the courtroom during part of the closing arguments to the jury. He cites authorities from several jurisdictions holding such absence, un-

der the circumstances of those cases, to have been prejudicial error. With such holding there can only be agreement when objection to the judge's absence is raised at the time it occurs and when it is shown that defendant's rights were prejudiced by and during such absence. Absence of the trial judge from the courtroom at any stage of the trial, while it is in progress, is utterly inexcusable and deserving of censure. In *People* v. *Kimbrough,* 193 Mich 330, and *People* v. *Margelis,* 246 Mich 459, we said, however, that we will not hold such absence reversible error unless it be shown to have resulted in prejudice to the defendant. Was defendant prejudiced thereby in the instant case? He was represented at trial by 3 attorneys, not court appointed but of his own choosing. They interposed no objection whatsoever to the judge's absence from the courtroom. They acquiesced and must be held to have consented. From time to time they objected to statements of the prosecuting attorney made in his closing argument to the jury. In each instance the judge either was in or entered the courtroom, heard the objection and ruled on it. Not once did a dispute arise between the prosecutor and defense counsel as to what had been the substance of the prosecutor's remarks to which defense counsel were making objection, nor did the latter then complain that their objections could not be made properly or be fairly ruled upon because of the judge's absence at the time such remarks were made. There is nothing in the record to indicate that counsel felt at the time that defendant's rights were being prejudiced by the judge's occasional absence. The first objection in that regard was made by the defendant himself a decade and a half later. We have examined the record and carefully scrutinized the remarks of the prosecuting attorney to which objections were made and are of the opinion that while some of the remarks were

improper they were not of a character likely to have prejudiced defendant's rights, or to have influenced the jury improperly, and, hence, did not amount to reversible error. Under such circumstances we cannot now hold that defendant's rights were prejudiced by the judge's absence from the courtroom or that reversal should follow.

Defendant claims that his constitutional rights were invaded by the admission into evidence of testimony concerning his brandishing of a gun and use of a stolen automobile the night before and his commission of 2 offenses of armed robbery, 1 of stealing an automobile and 1 of breaking and entering and stealing from a hardware store, all on the night of and shortly before the homicide. A consideration of this claim requires a brief review of the facts leading up to and attending the killing. Defendant testified in substance that on the night in question he had goods stolen from the hardware store in a Ford coupe; that he drove the car into an unlighted and closed gasoline station for the purpose of inflating a tire and that, as he did so, he almost ran over a pedestrian and his wife, causing the pedestrian to become angry; that defendant asked the pedestrian (who happened to be the deputy sheriff for whose subsequent murder this prosecution was brought) to help him; that the deputy flashed a light into the car and asked defendant what he was going to do with the goods in the car, to which defendant replied that he was taking the goods home; that the deputy thereupon told his wife to go on home and told defendant to shut off his motor; that defendant did shut off the motor and the deputy then said, "We will go up the street;" that defendant accompanied the deputy on foot to the town fire station where the deputy looked around as if he were looking for somebody, but that they saw no one there; that the deputy then said, "Come on." "We will go back to

the car;" that they returned to the car; that on the way back to the car the deputy asked defendant where he "got the things that were in the car" and defendant answered that he got them from home, whereupon the deputy seemed to become more angry and said, "How in hell can you get them from home and take them home at the same time?"; that an accomplice of defendant's was waiting for him at the car when he and the deputy returned; that the deputy ordered them into the car, directing them to drive to the fire station, and when defendant objected that all 3 could not ride in the coupe the deputy replied that he would ride on the running board; that as they were driving toward the fire station defendant's accomplice tried to push the deputy off the moving car; that the deputy then said, "I'll get you * * * for that" and drew a gun, pointing it at defendant; that defendant then drew his own gun and shot the deputy in self-defense. Defendant claimed that he did not know the deputy or that he was an officer but admitted that on the way to the fire station he thought the man might be an officer and, further, that in the fire station he observed that the man was wearing a large holster and gun fastened to a big belt which contained a lot of bullets. The sheriff, who found the deputy in a dying condition, testified that the deputy told him that he had been shot by 2 men when he tried to arrest them after they had tried to run over him and his wife at the gasoline station.

In support of his contention that the testimony concerning his previous offenses that evening and the night before was inadmissible defendant cites *People* v. *Burt,* 51 Mich 199. An examination of this Court's opinion and the record and briefs in that case discloses that the appeal was not opposed by the people, that they filed no brief, that the attorney general confessed error on some undisclosed ground

and that, in passing upon the question of the admissibility, in defendant's trial for murder, of evidence concerning recent burglaries allegedly committed by him, this Court considered that question only from the angle of whether the testimony was competent to show that defendant was being subjected to a lawful arrest when he fired the shot which killed 1 of the 2 men seeking to arrest him. Inasmuch as the testimony of the survivor of those 2 men disclosed that they had no warrant for the defendant's arrest and no probable cause to believe him guilty of the robberies, this Court held that the evidence of the robberies, even if shown to have been committed by defendant, was inadmissible because, in the light of the survivor's admission of lack of probable cause to believe defendant guilty, the testimony could not have served the purpose for which it was offered, namely, to justify the arrest. In the instant case, however, in which defendant claims self-defense, the people urge that evidence of the fact that defendant was transporting stolen goods at the time and that he had shortly theretofore committed the offenses above mentioned was admissible as bearing on defendant's motive, intent and purpose in shooting the deputy. In the *Burt Case* this Court said of the 2 men attempting to arrest the defendant, "Except in the lack of specific intention to rob they in no way differed from any highway wrongdoers, and their appearance would justify anyone in believing them to be dangerous criminals." In the instant case, on the contrary, the facts and circumstances above outlined were such that defendant must have known that he was not being subjected to a holdup or the whims of a dangerous criminal. The fact that defendant had almost run over the deputy and his wife, that the deputy then insisted on taking him to the fire station, that the deputy wore a gun in a large holster and cartridge belt common to police

officers, and that he questioned defendant concerning the goods in his car and was directing defendant and his accomplice to the fire station at the time the shooting occurred, these were facts hardly indicative of a holdup but, rather, more suggestive of the idea that defendant was being arrested by an officer. Defendant admitted on the witness stand that at one stage, at least, he so thought. The deputy did not live to testify nor did he leave an associate surviving him to testify, as in the *Burt Case,* that they had no probable cause to believe defendant guilty of a crime justifying an arrest. In considering whether the deputy did have such probable cause the jury was not bound by nor limited to defendant's testimony but was entitled to be informed of and was bound to consider all the attending facts and circumstances as disclosed by the record and above outlined. These we believe to have been sufficient to make the question of the legality of the arrest and of whether an arrest actually was being attempted, one of fact for the jury. With a record sufficient to justify a jury finding that defendant was being subjected to a lawful arrest and that he must have known that he was being arrested by an officer, defendant's claim that he shot the officer in self-defense and that the killing was a justifiable homicide of necessity opened the door to all relevant testimony bearing on defendant's reasons for shooting the officer. Was the homicide justifiable and did defendant think at the time that it was necessary to shoot in defense of his own life, or did he shoot, as claimed by the people, for the purpose of preventing arrest, detection of his possession of stolen goods and discovery of his complicity in the crimes shortly theretofore committed by him? As bearing on the defendant's motive, purpose and intent in shooting the officer, the testimony concerning his recent offenses was admissible. *People* v. *Wright,* 315 Mich 81; CL 1948, § 768.27

(Stat Ann § 28.1050).   See, also, *People* v. *Zabijak,*
285 Mich 164.   The instant case is, in this respect,
clearly distinguishable from another case relied upon
by defendant, namely *People* v. *Padgett,* 306 Mich
545, in which the defendant was charged with a mur-
der which was committed in the perpetration of a
robbery.   In that case the sole question was one of
the killer's identity and we there held that evidence
of another robbery committed by the defendant 15
days before the murder was inadmissible.   This was
clearly because the evidence had no probative force
to identify defendant as the person who committed
the murder for which he was being tried.   Such is
not the situation at bar.

Defendant charges that the trial court erred in
permitting the prosecuting attorney to cross-examine
the defendant concerning the mentioned previous
offenses, maintaining that this violated his constitu-
tional right against self-incrimination.   Defendant
voluntarily took the stand as a witness.   On direct
examination he testified about the breaking and en-
tering of the hardware store and the stolen goods in
his car.   Thus, he waived his constitutional right of
refusing to answer any question material to the case,
even though the answer tended to prove him guilty
of some other crime than that for which he was on
trial.   *People* v. *Robinson,* 306 Mich 167.   The cross-
examination as to previous offenses was permissible
and proper in that it bore upon defendant's intent,
purpose and motive in shooting the deputy.   *People*
v. *Wright, supra.*

Affirmed.

BOYLES, C. J., and REID, NORTH, BUTZEL, CARR,
BUSHNELL, and SHARPE, JJ., concurred.