SCOTT v ANGIE'S, INC

Docket Nos. 79527, 83651, 83001. Submitted April 9, 1986, at Detroit. Decided August 4, 1986. Leave to appeal denied, 426 Mich 883.

Plaintiff, Sheldon J. Scott, filed an action in the Oakland Circuit Court against defendants, Angie's, Inc., Paul Woods, Robert Taylor, and Ohio Casualty Insurance Company. Plaintiff alleged that he was injured as a result of an altercation, in which he did not actively participate, between defendants Woods and Taylor that took place at Angie's Bar, owned by defendant Angie's, Inc. Following a trial, at which the trial judge, David F. Breck, J., left the courtroom along with the court reporter when the deposition testimony of several witnesses offered by plaintiff was read to the jury, the jury returned a verdict of no cause of action. The trial court subsequently awarded attorney fees to defendants Angie's, Inc., Ohio Casualty Insurance Company, and Robert Taylor. Plaintiff appealed from the verdict and the orders awarding attorney fees. *Held:*

1. While no objections were raised during the presentation of the deposition testimony itself, Judge Breck having ruled on such objections prior to the presentation to the jury, the possibility of prejudice to plaintiff due to the judge's absence during the presentation was too great to be condoned and resulted in error requiring reversal. The Court of Appeals agreed with plaintiff's claim that: (1) by his absence, the trial judge indicated to the jury that the deposition testimony was inessential and that the jury's attention may wander during the reading, and (2) the trial judge was unable to properly rule on plaintiff's objection that one of the defense counsel had mischaracterized the deposition testimony of a witness during his closing argument.

2. The trial judge did not err by giving the standard jury

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 296 *et seq.*

Am Jur 2d, Intoxicating Liquors §§ 561 *et seq.*

Am Jur 2d, Trial §§ 45-48.

Common-law right of action for damage sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit-forming drug to another. 97 ALR3d 528.

Absence of judge from courtroom during trial of civil case. 25 ALR3d 637.

instruction on the duty of a possessor of land, premises, or place of business to an invitee instead of an instruction requested by plaintiff. The common-law duty of a liquor establishment to maintain a safe place of business for its customers is the same duty any business owes to those it invites upon its premises.

3. The trial judge properly admitted into evidence plaintiff's .18 percent blood-alcohol test result. The blood-alcohol test was performed in the course of plaintiff's emergency medical treatment, the written record of the test result was not excluded by the hearsay rule, and plaintiff did not challenge the admission of the blood test results on the grounds that any of the steps outlined in *Gard v Michigan Produce Haulers*, 20 Mich App 402 (1969), were not followed. However, the trial court erred to the extent that it allowed a witness's testimony by deposition that plaintiff's .18 percent test result was almost twice the legal limit for intoxication. The statutory presumption that a person with .10 percent or greater blood-alcohol content is intoxicated only applies in a case where that person is charged with operating a motor vehicle while under the influence of intoxicating liquor.

Reversed and remanded for a new trial.

DANHOF, C.J., dissented. He would hold that the absence of a judge from the courtroom at any stage of trial does not constitute error requiring reversal unless it is shown to have resulted in prejudice to the complaining parties. While he did not approve of the trial judge's practice of leaving the courtroom when depositions were read to the jury, he did not find that reversible error arose under the circumstances of this case.

OPINION OF THE COURT

1. APPEAL — COURTS — PRESENCE OF TRIAL JUDGE — EVIDENCE — DEPOSITIONS.

The presence of the trial judge at all stages of a trial is absolutely necessary; the trial judge is such a necessary part of the court in the eyes of the jury that his absence will taint the proceedings; a trial judge therefore may not absent himself from the courtroom during the reading of deposition testimony at trial (MCL 600.1501[3]; MSA 27A.1501[3]).

2. NEGLIGENCE — INVITEES — COMMON-LAW DUTY — LIQUOR ESTABLISHMENTS.

The common-law duty of a liquor establishment to maintain a safe place of business for its customers is the same duty any business owes to those it invites upon its premises.

3. INTOXICATING LIQUORS — DRAMSHOP ACTIONS — BLOOD-ALCOHOL
      TESTS — PRESUMPTION OF INTOXICATION.
   The statutory presumption that a person with a blood-alcohol
   content of .10 percent or greater is intoxicated applies only to
   charges of driving under the influence of intoxicating liquor;
   the presumption does not apply to the comparative negligence
   of a plaintiff in a dramshop case where the issue is whether the
   liquor establishment has served someone who is visibly intoxi-
   cated (MCL 257.625a; MSA 9.2325[1]).

DISSENT BY DANHOF, C.J.

4. APPEAL — COURTS — PRESENCE OF TRIAL JUDGE — EVIDENCE —
      DEPOSITIONS.
   *The absence of a judge from the courtroom at any stage of trial
   does not constitute error requiring reversal unless such absence
   is shown to have resulted in prejudice to the complaining
   parties.*

*Lopatin, Miller, Freedman, Bluestone, Erlich,
Rosen & Bartnick* (by *Kay Honigman-Singer*), for
plaintiff.

*Donald J. Morbach & Associates, P.C.* (by *Robert
B. Tatham*), for defendant-appellee Angie's, Inc.

*Denenberg, Tuffley, Bocan, Jamieson, Black,
Hopkins & Ewald* (by *Susan Tukel*), for defendant-
appellee Woods.

*Barbier, Goulet, Petersmarck, Tolleson, Mead &
Page, P.C.* (by *Steven M. Potter* and *Christopher
G. Manolis*), for defendant-appellee Taylor.

*Kallas, Azoni, Henk & Geik* (by *Constantine N.
Kallas*), for defendant-appellee Ohio Casualty In-
surance Company.

Before: DANHOF, C.J., and HOOD and J. B. SULLI-
VAN, JJ.

HOOD, J. In this consolidated appeal, plaintiff
appeals as of right from the entry, following a jury

trial, of a judgment of no cause of action in favor of all defendants, the order awarding Angie's Inc., and Ohio Casualty Insurance Company attorney fees, and the order awarding defendant Robert Taylor attorney fees. Plaintiff was injured during an altercation at Angie's Bar, owned by defendant Angie's, Inc. When defendants Paul Woods and Robert Taylor began swearing and pushing and shoving each other, Angelo Zerbo, Angie's general manager, and an unidentified doorman intervened and attempted to separate them.

Plaintiff's version of what happened next differs from defendant Woods' version. Plaintiff testified that he was watching the fight between Woods and Taylor, and had just lifted a glass of wine to his mouth. Suddenly, the wine glass was knocked from his hand, and he was struck in the right side of the face and went flying backwards. Plaintiff was knocked backwards about five feet, the back of his knees buckling as he hit a bench. His head hit the wall, knocking him unconscious. Defendant Woods testified that the fight was over between he and defendant Taylor, and he was heading back towards his original seat in the bar when he heard someone coming after him from behind, swearing at him. He kept walking, but someone grabbed his shoulder, and he just wheeled and swung, and hit plaintiff.

Zerbo testified he did not see plaintiff interfere with or grab defendant Woods, and was first aware of plaintiff when he saw him flying backwards through the air. Zerbo also testified that employees of Angie's Bar rushed to plaintiff's assistance. Plaintiff was knocked out cold and when he did not revive, Zerbo called the police and Emergency Medical Services. Emergency personnel were on the scene within a matter of minutes.

During the trial and over plaintiff's counsel's

vigorous objections, the trial judge indicated that, in accordance with his regular practice, he would instruct the jury that deposition testimony is to be accorded the same weight as live testimony, but that he would absent himself from the courtroom during the reading of all deposition testimony. Judge Breck then gave this instruction:

> *The Court:* Let me tell you about depositions. There's no need for the Court reporter or I to be in the Courtroom because these depositions were taken before a Court reporter like Ms. Coleman and then they were typed up and the attorneys have had a chance to go over it. They [sic] may be a couple places in these depositions where there's a—some lines which are skipped and that's because there were some objections and I have ruled on those objections and so some parts of this or these various depositions that you will hear during the trial, there will be some areas that are skipped because I have excluded some of the questions and some of the answers. The fact that I'm not in the Courtroom or that my Court reporter is not in the Courtroom does not diminish the value of the testimony. I want you all to understand that. I can review the deposition testimony if necessary, but you are the people who have to decide the facts of the case and therefore, it is not necessary for me to be here to review that testimony.
>
> Now all sides were given an opportunity to be present at the depositions and the witnesses have been sworn to tell the truth, so you should treat the deposition testimony the same as if the person was here. The taking of a deposition is just a convenient way often times to get somebody's testimony in advance of the trial and to avoid bringing that person to trial to Court. When this deposition is done, I will ask Mr. Lopatin to come back and get me and we will come back and in [sic] and see what's next.

Following the instruction, the depositions of de-

fendant Robert Taylor, Dr. James Lowe, Dr. James Ausman, emergency room physician Dr. Gloria Strutz and nurse Jeannine Norgiel were read into evidence. When trial resumed the following morning, prior to the reading into evidence of the deposition of Dr. Howard Topak, Judge Breck again instructed the jury as follows:

> *The Court:* As you will recall now, as I have said before, you should give this testimony just as much credance [sic] and weight as you would if I were in the courtroom and if the court reporter was in the courtroom. The fact we're not here doesn't diminish the value of that testimony at all.

At the conclusion of the trial, plaintiff's counsel requested the following instructions on premises liability:

> The duty of a tavern keeper to protect the patron from injury by another arises when one or more of the following circumstances exist:
>
> (1) Allowance of a person on the premises who has a known propensity for fighting;
>
> (2) Allowance of a person to remain on the premises whose conduct has become ostreperous [sic] and aggressive to such a degree that the tavern keeper knew, or ought to have known, he endangered others;
>
> (3) Warning of a danger from an ostreperous [sic] patron and failure to take suitable measures for the protection of others;
>
> (4) Failure to stop a fight as soon as possible after it started;
>
> (5) Failure to provide a staff adequate to police the premises; and
>
> (6) Toleration of disorderly conditions.

> The duty of a proprietor or keeper of a tavern to protect a customer against the aggressions of third

persons on the premises is that of the exercise of ordinary care in keeping the premises safe.

However, the trial court refused to give either of plaintiff's requested instructions and instead, over plaintiff's objection, gave SJI2d 19.03.

Plaintiff first contends that the trial judge seriously undermined the effectiveness of the deposition testimony by leaving the courtroom during the reading of all depositions. Plaintiff argues that when a judge leaves the courtroom on each occasion that deposition testimony is presented, the judge conveys to the jury that deposition testimony is so inessential that the judge's presence is not required. Plaintiff points out that the majority of his case in chief was presented through the reading of deposition testimony in the absence of the judge, but that the judge was never absent from the courtroom during defendants' case. Plaintiff submits that the prejudice became more apparent when defendant Woods' counsel allegedly factually misrepresented deposition testimony read to the jury while Judge Breck was absent from the courtroom. Plaintiff urges that had the judge been present while the depositions were read, he could have accurately ruled on the objections instead of simply instructing the jury to "recall the testimony the best you can."

We conclude that the trial judge's physical absence from the courtroom during the reading of the depositions was erroneous. The Michigan Legislature has expressed the necessity for a presiding judicial officer during court proceedings in MCL 600.1501(3); MSA 27A.1501(3):

(3) Whenever the judge of any circuit or superior court fails to attend a court session, the court shall stand adjourned until a judge authorized to hold

court is in attendance. The judge authorized to
hold court has full power to hear, try, and deter-
mine all causes, matters, and proceedings lawfully
brought before him within the jurisdiction of the
court.

In *State Highway Comm'r v Gulf Oil Corp,* 377
Mich 309; 140 NW2d 500 (1966), a condemnation
proceeding, after the jury was impaneled, the
judge left the courtroom and did not return until
he gave his charge. The Supreme Court summa-
rized the Michigan cases which had considered the
question of a judge's absence from the courtroom
during trial:

> In *People v Morehouse,* 328 Mich 689 [44 NW2d
> 830] (34 ALR2d 676, 678) [1950], *certiorari denied,*
> 341 US 922 (71 S Ct 739, 95 L Ed 1355 [1951]),
> appellant argued that jurisdiction was divested
> from the trial court when the judge absented
> himself from the courtroom. This Court character-
> ized the absence as "error", but, since it was not
> prejudicial and not objected to, it was held not
> reversible. See, also, *Spencer v Johnson,* 176 Mich
> 278, 284, 285 [142 NW 582 (1913)]; *Prine v Singer
> Sewing Machine Co,* 176 Mich 300, 318, 319 [142
> NW 377 (1913)]; *Miller v Young,* 196 Mich 276,
> 282-285 [163 NW 27 (1917)]; *Trudell v Pearll,* 219
> Mich 514, 519 [189 NW 61 (1922)]; *Wolfe v Gran-
> over,* 249 Mich 626, 629 [229 NW 617 (1930)].
>
> *Miller and Trudell* concern themselves with the
> absence of the trial judge during reception of
> verdict. While the decisions do not approve of the
> judge's absence (nor do we in this instance), none
> characterizes the absence as a jurisdictional defect.
> They all speak of the absence as an error or an
> irregularity which may be waived. [377 Mich 313.]

The majority found that because the judge was
available at all times and because defendant never
objected to the judge's absence during the trial,

the error was waived. See also *Adle v State Highway Comm'r,* 4 Mich App 9; 143 NW2d 787 (1966), lv den 379 Mich 752 (1967).

Most jurisdictions seem to follow this rule that the defect created by the judge's absence from the courtroom is waived where the complaining party either consented in advance before the judge's departure or failed to raise any objection to the judge's absence. See 75 Am Jur 2d, Trial, § 47, pp 159-160; Anno: *Absence of Judge From Courtroom During Trial of Civil Case,* 25 ALR3d 637. In this case, it is clear that plaintiff's counsel did object when the judge announced he proposed to absent himself during the reading of the depositions. The judge nonetheless ruled that so long as the depositions had been sanitized and since he had previously ruled upon all of the parties' objections to the testimony, he would absent himself from the courtroom following his cautionary instruction that the jury should give the testimony the same attention that it gave the live testimony. The defendants argue that the judge's jury instructions and his continued availability during the reading of the depositions made any error harmless. Defendants contend that the plaintiff has failed to prove prejudice as a result of the judge's absence.

The general rule that can be drawn from the Michigan cases does appear to be that the party complaining of the absence of the trial judge during the course of the proceedings is entitled to reversal only if he or she is prejudiced as a result of the absence. *Wolfe v Granover, supra,* p 629; *People v Morehouse, supra,* p 692. However, most of the cases have rejected the appellants' arguments by combining into a single question the failure to preserve the issue by objection at trial and the failure to establish prejudice from the judge's absence. This appears to be attributable to

the reviewing court's disdain for the appellant's "appellate parachute" approach to the alleged error since failure to preserve the issue by timely objection militates against a finding of prejudice. In this case, plaintiff complains that he was prejudiced by the absence of the trial judge in two ways: (1) by his absence, the trial judge indicated to the jury that the deposition testimony was inessential and that their attention may wander during the reading, and (2) the trial court was unable to rule on plaintiff's objection that defendant Woods' counsel mischaracterized deposition testimony during his closing argument.

As to plaintiff's first claim, he points out that the difficulties inherent in presenting evidence by deposition are universally recognized by the judiciary. Indeed, it has been said of deposition testimony:

> There is a general rule that testimony read into the record or otherwise introduced by way of deposition shall have the same force and weight as testimony in open court. This is true more in theory that fact since testimony introduced in this manner has, rarely in actual experience, the force and effect of that delivered from the witness stand. [3 Callaghan's Michigan Pleading & Practice (2d ed), § 35.104, pp 334-335.]

The Committee on Standard Jury Instructions recognized that evidence presented by the reading of a deposition will not carry the same impact as when the evidence is presented by a live witness and, in an attempt to partially overcome the problem, recommended that the Supreme Court adopt SJI2d 4.11.

The trial judge in this case, in addition to twice instructing the jury at the time of the reading of the depositions, did give SJI2d 4.11 in his general

charge at the close of arguments.[1] Plaintiff none-
theless maintains that Judge Breck's actions in
leaving the courtroom during the reading of the
depositions blunted the effect of these cautionary
instructions and eloquently stated to the jury,
"this deposition is so inessential that my presence
is no longer required. Your attention may wander
during the following reading."

We have found only one case which has ad-
dressed the propriety of a judge's absence from the
courtroom during the introduction of deposition
testimony. In *Seley v G D Searle & Co,* 67 Ohio St
2d 192; 423 NE2d 831 (1981), the Ohio Supreme
Court declined to reverse where the trial judge
absented himself from the courtroom during the
presentation to the jury of a lengthy videotaped
deposition of an expert witness. The court rea-
soned that because the trial judge had previously
reviewed and ruled upon objections from a written
transcript of the videotape and the videotape had
been edited accordingly, the absence of the judge
did not amount to reversible error. The court also
noted that although in the judge's absence the
Seleys' counsel objected fifty-six times in the pres-
ence of the jury to testimony concerning charts
and visual aids used as exhibits in the deposition
which had not been ruled upon by the trial court
prior to the presentation of the deposition, no
reason was provided as to why the visual aids were

---

[1] The trial court's instruction, based on SJI2d 4.11, stated:

During the trial, certain evidence was presented to you by
the reading of depositions. A deposition is a record of the sworn
testimony of parties or witnesses taken before an authorized
person. All parties and their attorneys had the right to be
present and to examine and cross-examine the witnesses.

The evidence is entitled to the same consideration as you
would give the same testimony had the witnesses testified in
open court.

not available to the trial judge for review at the time of his examination of the videotape transcript.[2]

We are unwilling to go as far as the *Seley* court. While in the instant case no objections were made during the presentation of the deposition testimony itself which required Judge Breck's presence, the possibility of prejudice inuring due to the judge's absence from the bench during the greater portion of plaintiff's case is too great to be condoned. Absent the Michigan Supreme Court's imprimatur of approval by way of decisional law or adoption of a court rule, we think that the presence of the judge at all stages of the trial is

[2] The *Seley* decision is perhaps best explained by reference to Ohio's rules governing the use of videotape depositions at trial, as set forth in the opinion:

Although not in effect at the time of trial, C. P. Sup. R. 12(A)(15) provides:

"Objections at trial. Objections should be made prior to trial and all presentation of the videotape at trial. If an objection is made at trial which has not been waived pursuant to Civil Rule 32 (D)(3) or previously raised and ruled upon, such objection shall be made before the videotape deposition is presented. The trial judge shall rule on such objections prior to the presentation of the videotape. If an objection is sustained, that portion of the videotape containing the objectionable testimony shall not be presented."

C. P. Sup. R. 12(B)(4)(5) provides:

"Objections. All objection must be made and ruled upon in advance of the trial. Objections may not be made during the presentation of the videotape evidence.

"Presence of counsel and trial judge. *In jury trials, counsel for the parties and trial judge need not be present in the courtroom when the videotape testimony is played to the jury.* If the trial judge leaves the courtroom during the playing of the videotape, he shall admonish the jurors regarding the duties and responsibilities. In the absence of the judge, a responsible officer of the court shall remain with the jury. The trial judge shall remain within such proximity to the courtroom that he can be readily summoned." [Emphasis in original. 670 Ohio St 2d 207.]

The Michigan Court Rules contain no similar provisions for either videotaped or transcribed depositions.

absolutely necessary to its validity. We believe that the judge is such a necessary part of the court in the eyes of the jury that his absence taints the proceedings held during that absence. We think that public policy demands that the tribunal should be constituted during the entire trial in the manner prescribed by law in MCL 600.1501(3); MSA 27A.1501(3).

The specter of prejudice in this case is given shape by plaintiff's other argument that the trial court was unable to rule on plaintiff's objection that defendant Woods' counsel mischaracterized the deposition testimony of Dr. Ausman during closing argument. Whether or not plaintiff's contention was true, the trial judge's statement to the jury that it would have to "recall the testimony as best you can" suggests that the judge might have been more familiar with the deposition testimony and more able to offer a definitive ruling on plaintiff's objections had he been present for the reading of the depositions. We conclude that the judge's absence from the courtroom resulted in too great a potential for material prejudice to plaintiff to be viewed as harmless error by this Court.

We address two other alleged errors because these questions may again arise on retrial. As noted, plaintiff sought a specialized premises liability instruction on the duty of a tavern keeper to protect business invitees. The trial court declined to give this instruction and instead gave the general premises liability instruction set forth in SJI2d 19.03. We find no error.

This Court did approve of the instruction sought by plaintiff in *Gorby v Yeomans*, 4 Mich App 339, 343; 144 NW2d 837 (1966). That instruction was subsequently utilized in *Manuel v Weitzman*, 23 Mich App 96, 98-99; 178 NW2d 121 (1970). On

appeal the Supreme Court modified *Manuel.* 386 Mich 157; 191 NW2d 474 (1971).

While the Supreme Court decision focused upon the determination that the common-law premises liability cause of action survived the passage of the dramshop act, the Supreme Court also declined to rely upon the premises liability duty instruction set forth in *Gorby.* Instead, quoting from *Torma v Montgomery Ward & Co,* 336 Mich 468, 476; 58 NW2d 149 (1953), the Supreme Court said that when one "expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." *Manuel,* 386 Mich 163. The Supreme Court further indicated in *Manuel* that:

> The common-law duty of a liquor establishment to maintain a safe place of business for its customers is the same duty any business owes to those it invites upon its premises. [Id.]

Since *Manuel,* no panel of this Court or the Supreme Court has relied on the *Gorby* definition of a dramshop owner's common-law duty to an invitee.

We disagree with plaintiff's contention that the trial court's refusal to give the requested instruction precluded the jury from applying the law to the evidence presented at trial. SJI2d 19.03, which was adopted in 1982, correctly directed the jury on the issue of duty. The instruction given was brief, direct, responsive, and accurate. There was no misstatement of the law. See *Moody v Pulte Homes, Inc,* 423 Mich 150, 170-171; 378 NW2d 319

(1985). Because SJI2d 19.03 sufficiently apprised the jury of the proper standards to be used when determining the standard of care of a tavern owner toward an invitee, plaintiff's claim of error on this question is without merit.

Plaintiff also contends that the trial court erroneously admitted the results of a blood-alcohol test administered to plaintiff at the hospital emergency room on the night of the altercation. Through the deposition testimony of emergency room physician Gloria Strutz, defendants were allowed to admit the results of a blood-alcohol test done at the emergency room several hours after the altercation. Dr. Strutz testified that plaintiff's blood alcohol content was .18 percent. Strutz also testified that .10 percent is the legal level of intoxication, and .18 percent indicated that plaintiff's degree of intoxication was "like twice the legal drunk level almost." During closing arguments, the defense counsel all argued that this testimony not only indicated plaintiff's comparative negligence, but it also called into question plaintiff's account of the altercation since "drunks do not remember things accurately."

Plaintiff asserts that defendant failed to lay a sufficient foundation to show that the blood-alcohol test was taken incident to hospital treatment. We disagree. During the Strutz deposition, plaintiff did not object to the foundational basis for Strutz's testimony about the result of the blood-alcohol test. The blood-alcohol test administered to plaintiff was obviously incident to the hospital treatment which he was receiving upon being brought to the emergency room after the altercation at the bar. Moreover, in the absence of a timely objection during the deposition, plaintiff's argument that the blood-alcohol test is inadmissible as hearsay is without basis.

Further, pursuant to MRE 803(6) a memorandum, report, record, or data compilation kept in the course of a regularly conducted business activity is not excluded by the hearsay rule, even though the declarant is available as a witness. The conditions precedent to the admission of a blood sample analysis into evidence were stated in *Gard v Michigan Produce Haulers,* 20 Mich App 402, 407; 174 NW2d 73 (1969), lv den 383 Mich 777 (1970). The standards for admission set in *Gard* ensure that the test results are based on a reliable blood sample. *Gard, supra,* p 408. Plaintiff did not at the deposition challenge the admission of the blood test on the grounds that any of the steps outlined in *Gard* for admission of a blood-alcohol test were faulty. Nor did he offer any other objection based on a lack of foundation at the time of the Strutz testimony.

However, we do agree with plaintiff's claim of error to the extent that Dr. Strutz was allowed to testify that .18 percent was almost twice the .10 percent legal limit for intoxication. The statutory presumption of intoxication referred to by Dr. Strutz and argued to the jury by defendants applies only to charges of driving under the influence of intoxicating liquor, pursuant to MCL 257.625a; MSA 9.2325(1). The presumption does not apply to the comparative negligence of the plaintiff in a dramshop case where the issue is whether the tavernkeeper has served someone who is "visibly intoxicated." Thus, while we hold that the blood-alcohol test result itself was properly admitted in this case, we think it was clear error for the trial court to permit Dr. Strutz to testify that a .18 percent blood-alcohol content result is almost twice the legal level of intoxication. On retrial, this part of Dr. Strutz's deposition should not be read to the jury.

Our disposition of this case on these issues makes it unnecessary to consider the questions raised regarding the awards of attorney fees to defendants Taylor, Ohio Casualty and Angie's, Inc. Because we find that the trial judge's absence from the courtroom during the reading of the depositions resulted in too great a potential for material prejudice to plaintiff to be viewed as harmless, and because of the error in admitting Dr. Strutz's explanation of the blood-alcohol test result, we reverse and remand for a new trial.

Reversed and remanded.

Sullivan, J., concurred.

Danhof, C.J. *(dissenting.)* I respectfully dissent from the majority's holding that reversible error resulted from the judge's absence from the courtroom. I do not approve of the judge's practice, but am unable to find that reversible error arose in the circumstances presented in this case.

The majority correctly states the general rule described in Michigan case law, namely, the absence of the judge from the courtroom at any stage of trial will not be considered reversible error unless it is shown to have resulted in prejudice to the complaining parties. *People v Morehouse,* 328 Mich 689; 44 NW2d 830 (1950), cert den 341 US 922; 71 S Ct 739; 95 L Ed 1355 (1951); *Wolfe v Granover,* 249 Mich 626, 629; 229 NW 617 (1930); *People v Clyburn,* 55 Mich App 454, 459; 222 NW2d 775 (1974).

In this case the judge ruled on evidentiary objections before the deposition testimony was read. No evidentiary objections were raised during the presentation of the deposition testimony which would have required the judge's presence. No claim was made that the judge would not have been readily

available in the event an evidentiary objection had been raised. The record shows that the judge repeated his cautionary instruction to the jury before the depositions of Taylor, Lowe, Ausman, Norgiel, and Topcik were read. The record indicates that, out of four days of testimony, the deposition testimony lasted approximately three and one-half hours, a comparatively short amount of time. No claim is made that misconduct on the part of the jurors or other individuals present in the courtroom occurred in the judge's absence. The judge properly instructed the jury to recall the evidence as best as possible upon plaintiff's objection during closing arguments. On this record I find no prejudice to plaintiff, and thus no reversible error.

In an analogous case, *Bakhit v Thomsen,* 193 Neb 133; 225 NW2d 860 (1975), a similar conclusion was reached. After the jury had commenced its deliberations, it requested the reading of a deposition. The trial judge, having commenced another trial, was not available and was not present during the reading of the deposition. The Nebraska Supreme Court concluded that no prejudice arose because the reading was purely a mechanical function involving no discretion and no courtroom misconduct was alleged to have occurred.

I note that the Michigan Court Rules of 1985 do not expressly refer to the presence or the absence of the trial judge during the reading of deposition testimony. I believe that this subject is one more appropriately left to our Supreme Court to address via court rule.

I would affirm.