# STATE OF MICHIGAN

# COURT OF APPEALS

KAY FRAZIER,

        Plaintiff-Appellant,

v

GREGORY M. UITVLUGT, M.D., and EAST
LANSING ORTHOPEDICS ASSOCIATION,
P.C.,

        Defendants-Appellees.

UNPUBLISHED
May 24, 2016

No. 325241
Ingham Circuit Court
LC No. 11-000672-NH

Before: SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right from a judgment of no cause of action in this medical malpractice action entered following a jury trial. We affirm.

Plaintiff treated unsuccessfully with a podiatrist in an attempt to relieve pain in her ankles and feet caused by congenital flat feet and bunions. She thereafter contacted defendant Gregory M. Uitvlugt, M.D.,[1] an orthopedic surgeon employed by defendant East Lansing Orthopedics Association, P.C., because she wanted to explore surgical options. During an appointment with defendant, plaintiff initially described her complaint as bunion pain in her right foot. After listening to plaintiff's descriptions of the pain she was experiencing and obtaining x-rays, defendant discussed treatment options with plaintiff. He explained the risks and benefits of surgery, including a surgical procedure known as the "All American."[2] Plaintiff decided to have the All American procedure on her left foot on February 2, 2009. However, after further reviewing the information provided to her by defendant, plaintiff decided that she wanted surgery on the right foot instead of the left foot. Plaintiff informed defendant's office of her decision on January 9, 2009.

---

[1] Use of the singular term "defendant" in this opinion refers to Dr. Uitvlugt.

[2] Defendant testified that "All American" is a generic term that incorporates a series of procedures to address an acquired flat foot.

-1-

On the date scheduled for surgery, defendant informed hospital staff not to give any medication to plaintiff before he had the opportunity to talk with her to determine what her primary complaints were at that time and to confirm the surgery she wanted. Plaintiff's primary complaint at the time involved right foot pain. According to defendant, he explained to plaintiff that a bunionectomy would alleviate the bunion pain but would not address the pathology of the bunion, which included a tight heel ligament and a flat foot. He explained to plaintiff that he could perform the All American procedure on her right foot to address all of the foot and ankle issues, or he could perform a bunionectomy, or she could choose not to have surgery at all. Plaintiff agreed that defendant told her that the decision was hers to make and that she initialed a revised consent form authorizing defendant to perform the All American procedure on her right foot. Plaintiff does not dispute that defendant properly performed the surgery and that she never complained to defendant or any hospital staff about the surgical procedure performed.

At the end of April 2009, plaintiff addressed with defendant her concern about drainage in the area of the surgery. Defendant did not observe any clinical signs of infection. On May 17, 2009, plaintiff went to an urgent care center with this same concern and was advised to go to the hospital. Laboratory tests performed at the hospital did not reveal the presence of an infection, but defendant chose to treat the situation aggressively. He thus performed a second surgery on May 19, 2009 to debride the wound and remove all of the hardware that had been placed during the first surgery. Defendant observed no loose hardware or breakage, both of which would have been indicative of infection. Laboratory tests were normal, but deep culture samples came back suggestive of infection. By October 29, 2009, the surgical wound was completely healed.

On May 29, 2011, plaintiff filed the present suit in which she alleged, in relevant part, that defendant was negligent in performing an unnecessary surgical procedure and in failing to obtain proper informed consent. The jury determined that defendants were not professionally negligent in one or more of the ways alleged by plaintiff and, accordingly, the trial court entered a judgment of no cause of action.

Plaintiff first argues that the trial court abused its discretion by allowing defendants to amend their witness list after the close of discovery to add a witness who could present evidence that Richard Vance, M.D., an expert witness on the standard of care, had been censured by the American Academy of Orthopedic Surgeons (AAOS). She also argues that the trial court abused its discretion by denying her request to present evidence regarding the AAOS disciplinary procedures in order to establish bias. This Court reviews a trial court's decision to allow amendment of the witness list for an abuse of discretion. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991). A preserved issue regarding the admission or exclusion of evidence is also reviewed for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

We reject plaintiff's argument that the trial court's pretrial ruling that Dr. Vance could be impeached with evidence of the AAOS censure precluded her from presenting Dr. Vance as a witness. Plaintiff chose not to present Dr. Vance's deposition testimony after the trial court made a pretrial ruling with impeachment implications. Plaintiff was faced with a decision whether to present Dr. Vance's testimony and face the possibility that evidence of the censure

would be entered, or to not present Dr. Vance as a witness. She could have presented Dr. Vance's and sought to counter the impeachment. Or she could have sought out a different witness. Or she could have proceeded as she did. Moreover, as our Supreme Court observed in *People v* Boyd, 470 Mich 313, 319; 682 NW2d 459 (2004), "any possible harm from a trial court's ruling in limine allowing impeachment" is speculative until the testimony occurs. Moreover, the witness testimony is necessary in order to do a proper harmless error analysis. *Id.* Or, to paraphrase the Supreme Court, error only occurs when error occurs. *Id.* at 370. In short, we will not speculate about how the trial would have turned out had plaintiff presented Dr. Vance's testimony and defendant had presented its impeachment evidence.

Plaintiff also argues that the trial court erred by leaving the bench over plaintiff's objection during the presentation of the videotaped deposition of plaintiff's expert witness, Dr. Ronald Lederman. This Court reviews for an abuse of discretion the trial court's conduct during a trial. See *People v Romano*, 181 Mich App 204, 220; 448 NW2d 795 (1989).

Plaintiff relies on *Scott v Angie's, Inc*, 153 Mich App 652; 396 NW2d 429 (1986), in support of her argument that error requiring reversal occurs when a trial judge violates MCL 600.1501(3) by absenting himself or herself during the presentation of testimony by way of deposition. However, in *Scott* at 660, this Court noted the general rule that "the party complaining of the absence of the trial judge during the course of the proceedings is entitled to reversal only if he or she is prejudiced as a result of the absence." See *People v Morehouse*, 328 Mich 689; 44 NW2d 830 (1950). The *Scott* Court concluded that the plaintiff there was prejudiced because the trial judge was absent from the bench during the "greater portion of plaintiff's case" and because the trial court was unable to rule on the plaintiff's objection that defense counsel mischaracterized the deposition testimony of a doctor during closing argument, instructing the jury that it would have to "recall the testimony as best you can." *Scott*, 153 Mich App at 663-664. The Court concluded that the judge's absence from the courtroom resulted in too great a potential for material prejudice to plaintiff to be viewed as harmless error. *Id*. at 664.

In this case, when the jury viewed the videotaped depositions, the trial judge's role was primarily as an observer of the trial, not as a participant in the trial process. Before each videotaped deposition was played, the judge gave the jury a cautionary instruction characterizing his position at this point as a neutral observer. The judge instructed that no inference for or against either party was to be drawn as a result of his absence while the videotaped depositions were being played. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). We, however, caution the trial court that it is always a better practice to not leave the bench during the playing of a videotaped deposition.

Affirmed.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause