**Donna Marie ROGERS,
et al., Respondents,**

v.

**PONTI–PETERSON POST # 1720 VETERANS OF FOREIGN WARS OF the UNITED STATES OF AMERICA, INC.,
Appellant.**

No. C0–92–1462.

Court of Appeals of Minnesota.

Feb. 23, 1993.

Edward J. Matonich, David A. Arndt, Matonich & Persson, Chartered, Hibbing, for respondents.

Steven L. Reyelts, Steven W. Schneider, Halverson, Watters, Bye, Downs, Reyelts & Bateman, Ltd., Gerald J. Brown, Brown, Andrew, Hallenbeck, Signorelli & Zallar, P.A., Duluth, for appellant.

Considered and decided by RANDALL, P.J., and KALITOWSKI and SHORT, JJ.

## OPINION

SHORT, Judge.

This personal injury action arises from a traffic accident which caused injuries to Donna Rogers and her two children (victims). The trial court directed a verdict against Ponti–Peterson Post 1720 of the Veterans of Foreign Wars of the United States of America, Inc. (club) on the issue of whether the club illegally sold alcohol to Richard Masera (driver). The jury returned a verdict finding causal fault against the club and awarded over two million dollars to the victims. The club filed posttrial motions. The trial court denied those motions in the main, but reduced the jury award based on collateral source deductions. On appeal, the club argues the trial court erred in directing a verdict on the issue of an illegal sale and abused its discretion by denying a motion for a new trial.˙ The victims argue the trial court erred in calculating the amount of collateral source deductions. We affirm.

## FACTS

The club's liquor license limits its sales of liquor to club members and bona fide guests. Despite this licensing restriction, the club maintained a practice of serving anyone entering the club who was not obviously intoxicated or causing trouble. The driver was not a member of the club.

On the morning of the accident, the driver spent twenty to thirty minutes drinking alone at the club. He left the club, drove to another lodge where he was a member, and had at least one more drink. After leaving the lodge, the driver travelled down Highway 169 in Calumet, where his car crossed the center line, struck the rear of a pickup truck, and drove head on into the victims' van. The victims suffered serious injuries and the driver, whose blood alcohol level was between .14 and .18, was killed.

The victims sued the club, the lodge, the manufacturer and retailer of the van, and a van conversion company which replaced

equipment on the van. All parties but the club were dismissed from the case or settled with the victims. The case was submitted to the jury on a lengthy special verdict form. The jury returned a verdict finding fault of 35 percent against the club and 65 percent against the driver.

## ISSUES

I.  Did the trial court err in directing a verdict against the club on the issue of an illegal sale?

II.  Did the trial court abuse its discretion by failing to order a new trial?

III.  Did the trial court err in its calculation of collateral source deductions?

## ANALYSIS

### I.

In reviewing a directed verdict, we must make an independent determination of whether the evidence presented at trial was sufficient to present a factual question for the jury. *Nemanic v. Gopher Heating & Sheet Metal, Inc.*, 337 N.W.2d 667, 669 (Minn.1983). All evidence favorable to the club, and all reasonable inferences that can be drawn from that evidence, must be accepted as true. *Chemlease Worldwide, Inc. v. Brace, Inc.*, 338 N.W.2d 428, 432 (Minn.1983). The directed verdict may be upheld only if it clearly would be the trial court's duty to set aside a contrary verdict as against the weight of the evidence or as contrary to law. *Nemanic*, 337 N.W.2d at 670; *State Bank of Cologne v. Schrupp*, 375 N.W.2d 48, 51 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 13, 1985).

The club argues the trial court erred in directing a verdict against it on the issue of an illegal sale because: (a) there is some evidence to suggest the club's sale of alcohol to the driver was legal; and (b) Minn. Stat. § 340A.404 (1986 & Supp.1987) is unconstitutionally vague. We disagree.

a. The verdict is not against the weight of the evidence

A club's sale of liquor to a nonmember or nonguest is an illegal sale for dram shop purposes. Minn.Stat. §§ 340A.404, subd. 1(4), .801, subd. 1 (Supp. 1987); *Rambaum v. Swisher*, 435 N.W.2d 19, 22 (Minn.1989). The record demonstrates: (a) the driver was not a club member; (b) the driver came into the club alone; (c) the driver sat away from other patrons and drank alone at the club; (d) the club's bartender knew the driver was not a member and had not signed the club's guest book; (e) the bartender knowingly served alcohol to nonmembers and nonguests of the club; and (f) the club had a "relaxed" policy and practice of serving anyone despite its restrictive liquor license.

The club argues there is evidence sufficient to create a factual question for the jury on whether the driver was a guest of the club. We disagree. All the evidence and reasonable inferences suggest the driver was not a guest of either a club member or the club itself and the club sold alcohol to members of the general public without regard to their status as a member or guest. The verdict is not against the weight of the evidence.

b. The verdict is not contrary to law

The club also argues the trial court's finding that its sale of alcohol to the driver was illegal violates the due process clauses of the Minnesota and United States Constitutions because the phrase "bona fide guests" was not defined in the statute. We disagree. One who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality. *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn. 1979); *In re Martenies*, 350 N.W.2d 470, 473 (Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984); *see* Minn.Stat. § 645.17(3) (1992) (courts should presume the legislature does not intend to violate the constitution of the United States or of this state). We may exercise our power to declare a statute unconstitutional only when absolutely necessary and then with extreme caution. *Wegan v. Village of Lexington*, 309 N.W.2d 273, 279 (Minn.1981); *City of Richfield v. Local No. 1215, Int'l*

*Ass'n of Fire Fighters,* 276 N.W.2d 42, 45 (Minn.1979).

Minn.Stat. § 340A.404, subd. 1(4) provides in relevant part:

> A city may issue an on-sale intoxicating liquor license to the following establishments located within its jurisdiction:
>
> *   *   *   *   *   *
>
> (4) clubs or congressionally chartered veterans organizations provided that the organization has been in existence for at least three years and liquor sales will only be to members and bona fide guests.

The club does not claim the statute invites arbitrary enforcement. However, the club argues a person of average intelligence could not discern the meaning of "bona fide guests" by reading the statute's language. Because the legislature did not define that term, the club contends an ordinary person is kept guessing as to its meaning.

▇▇▇ An undefined word or phrase renders a statute constitutionally infirm only when the meaning of that word or phrase is neither commonly understood nor established by judicial construction in other statutes. *See, e.g., Minnesota Wood Specialties, Inc. v. Mattson,* 274 N.W.2d 116, 119 (Minn.1978) (since legislature did not define "owner" for purposes of the statute, the word must be held to include holders of a legal estate subject to a contract for deed). The phrase "bona fide," though not defined in the statute, has an ordinary meaning of "good faith." Webster's Ninth New Collegiate Dictionary defines the phrase "bona fide" as "made in good faith without fraud or deceit," and the word "guest" as "a person to whom hospitality is extended." *Webster's Ninth New Collegiate Dictionary* 166, 541 (1983). Black's Law Dictionary defines "bona fide" as "[i]n or with good faith; honesty, openly, and sincerely * * * [r]eal, actual, genuine, and not feigned." *Black's Law Dictionary* 160 (5th ed. 1979). It defines "guest" as "a person who is received and entertained at one's home, club, etc., and who is not a regular member." *Id.* at 636. The legislature used the phrase "bona fide guests" in accordance with its standard dictionary def-

inition to describe persons specifically welcomed to a club by its members. It is inconsistent with the common usage of that phrase and the purpose of the restricted license statute to interpret the phrase to include everyone.

Our position is consistent with definitions of the phrase "bona fide guest" in other states' statutes. *See, e.g.,* Cal.Bus. & Prof. Code § 23037 (West 1985) (a "bona fide guest" is "a person whose presence as a guest is in response to a specific invitation for the special occasion"); N.M.Stat.Ann. § 60-7A-13(C)(1) (Michie 1992) (" 'bona fide guest' means a person whose presence in the club is in response to a specific invitation by a member and for whom the member assumes responsibility"); *see also* N.D.Cent.Code § 53-06.1-01(2) (Supp.1991) (for purposes of gambling statutes, " '[b]ona fide guest' means a person who is not a member of an eligible organization, but who is allowed to use the facilities of the organization when invited by a member or the organization in accordance with the eligible organization's bylaws, articles of incorporation, charter, rules, or other written statement").

While our legislature might have removed the slightest possibility of confusion by including a definition for the phrase "bona fide guests," its failure to do so does not render section 340A.404 constitutionally infirm. A person of average intelligence would understand the license restrictions. In fact, a club employee admitted the club's policy of serving anyone was "deceitful." Because the phrase is not vague, and the statute as a whole establishes adequate guidelines to govern enforcement, we conclude Minn.Stat. § 340A.404 satisfies constitutional due process requirements and is not void for vagueness under either the federal or the state constitutions. Thus, the directed verdict on the issue of an illegal sale is not contrary to law.

II.

▇▇▇ When reviewing a denial of a motion for a new trial, we ask whether the denial involved a violation of a clear legal right or a manifest abuse of judicial discre-

tion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn.1981); *Bosshart v. Commissioner of Pub. Safety*, 427 N.W.2d 720, 722 (Minn. App.1988). The club argues the trial court abused its discretion by: (a) allowing attorney misconduct; (b) refusing to disclose to the jurors the amount of settlement; and (c) failing to find the jury's award excessive. We disagree.

First, the club neither objected to the closing argument nor sought a curative instruction. *See Jurgensen v. Schirmer Transp. Co.*, 242 Minn. 157, 166, 64 N.W.2d 530, 535 (1954) (offended party ordinarily must suggest to the trial court, before the jury retires, that part of the argument which he considers objectionable and must request proper or appropriate instructions to correct the claimed errors). The record does not reveal attorney misconduct sufficiently egregious to compel the trial court to act sua sponte or to warrant a new trial. *See Schwartz v. Consolidated Freightways Corp. of Del.*, 306 Minn. 564, 565, 237 N.W.2d 385, 386 (1975) (in the absence of an argument which is so outrageously flagrant that the trial court should act on its own motion, a party who fails to request corrective instructions before the jury retires waives any later claim that the statements of opposing counsel were so improper as to justify a new trial), *cert. denied*, 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976).

Second, the trial court properly refused to disclose to the jurors the dollar amount of the settlements because the club failed to lay the proper foundation for the admission of the releases. Our review of the record shows the club did not try to use the documents to prove bias, and the adversary process was preserved. *See Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn. 1978) (release agreement admissible under Rule 408 to prove bias; trial court's deviation will not constitute error if its modification substantially protects the rights of all parties and preserves the adversary process).

And third, the trial court did not err in failing to find the jury award excessive because the damage award is not manifestly and palpably contrary to the evidence. *See Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980) (jury's verdict will be disturbed only if it is manifestly and palpably contrary to the evidence). The record shows: (a) Donna Rogers sustained horrific injuries; (b) the jury awarded a large sum of damages to Donna Rogers, but awarded modest sums to her children who also were injured in the accident; and (c) there is evidence to support the dollar award. Under these circumstances, a new trial is not warranted.

### III.

Minnesota's collateral source statute prevents plaintiffs from recovering damages to the extent compensation is available from collateral sources. Minn. Stat. § 548.36 (1986). The primary purpose behind the statute is to prevent windfalls by plaintiffs at the expense of defendants. *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 334 (Minn.1990); *Buck v. Schneider*, 413 N.W.2d 569 (Minn.App.1987). The collateral source statute applies to dram shop actions. *Casper v. City of Stacy*, 473 N.W.2d 902, 906 (Minn.App.1991), *pet. for rev. denied* (Minn. Sept. 25, 1991). The statute, however, excepts from deduction those benefits for which a subrogation right has been asserted. Minn.Stat. § 548.-36, subd. 2(1). That exception ensures that any deduction against a damage award includes only the amount to which the plaintiff actually is entitled, and does not include amounts the plaintiff ultimately must pay over to a subrogee. *Imlay*, 453 N.W.2d at 334; *Buck*, 413 N.W.2d at 572. Moreover, the Dram Shop Act does not create double liability on the part of a liquor vendor to both a plaintiff and the plaintiff's insurers. Minn.Stat. § 340A.801, subd. 4 (1986); *see Paine v. Water Works Supply Co.*, 269 N.W.2d 725, 730 (Minn.1978) (in workers' compensation context, Dram Shop Act "may not be construed to create double liability by a third-party liquor vendor to both the employee's widow and the subrogated employer or compensation insurer").

The victims argue the trial court erred in determining collateral sources. We disagree. First, there is no right to subrogate uninsured motorist benefits against a liquor vendor. Minn.Stat. § 340A.801, subd. 4; *see Paine*, 269 N.W.2d at 730 (no right to subrogate workers' compensation benefits); *Ketterling v. Spud Bar, Inc.*, 398 N.W.2d 599, 600–01 (Minn.App.1986) (uninsured motorist benefits may not be set off by a liquor vendor against a judgment under the Dram Shop Act when the insurer possesses a subrogation interest), *pet. for rev. denied* (Minn. Feb. 18, 1987). Second, there is no evidence Blue Cross–Blue Shield asserted a subrogation right. The statutory collateral source reduction applies to all amounts paid for which a subrogation right has not been asserted. *Cf. Kohn v. La Manufacture Francaise des Pneumatriques Michelin*, 476 N.W.2d 184, 189 (collateral source reduction does not apply to amounts paid for which a subrogation right has been asserted), *pet. for rev. denied* (Minn. Dec. 13, 1991). And third, there is no right to subrogate benefits paid under a motor vehicle insurance policy against a liquor vendor. Minn.Stat. § 340A.801, subd. 4; *see Paine*, 269 N.W.2d at 730 (no right to subrogate workers' compensation benefits); *Ketterling*, 398 N.W.2d at 600 (basic economic loss benefits paid by an insurer to an injured policyholder may not be set off by a liquor vendor against a judgment under the Dram Shop Act when the insurer possesses a subrogation interest). Under these circumstances, the trial court properly determined collateral sources and deducted payments from the victims' damage awards. *See generally* Charles E. Spevacek, *Tort Reform in Minnesota—The Impact of the 1986 Legislative Enactments on General Civil Litigation*, 10 Hamline L.Rev. 461, 462–63 (1987) (describing proper procedure for achieving deduction for payments made by collateral sources).

## DECISION

The trial court properly directed a verdict on the issue of an illegal sale of alcohol because: (a) all the evidence and reasonable inferences suggest the driver was not a bona fide guest of either a club member or the club itself; and (b) a person of average intelligence would understand the club's license restrictions. On the record before us, we cannot say the trial court's denial of a motion for a new trial involved a violation of a clear legal right or a manifest abuse of judicial discretion. Finally, the trial court did not err in its calculation of collateral source deductions.

Affirmed.