Bonita Kay SHERMAN,
et al., Appellants,

v.

John MARDEN, Respondent.

No. C1–94–1037.

Court of Appeals of Minnesota.

Dec. 20, 1994.

Leslie A. Gelhar, Minneapolis, for appellants.

Steven L. Viltoft, Labore & Giuliani, Hopkins, for respondent.

Considered and decided by CRIPPEN, P.J., and HARTEN, and MULALLY *, JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

EDWARD D. MULALLY, Judge.

Appellant alleges that the trial court erred in allowing inadmissible hearsay testimony of an expert witness and that the trial judge's absence from the courtroom during presentation of videotaped deposition testimony constituted a prejudicial irregularity in the proceedings. We affirm.

## FACTS

Passenger Bonita Sherman sustained soft tissue neck injury during a car accident in January 1991. Following a three-day trial, the jury returned a special verdict finding that respondent John Marden was negligent but concluding that Sherman had not sustained permanent injury. The jury's verdict thus barred Sherman's recovery for noneconomic detriment under Minn.Stat. § 65B.51, subd. 3(b) (1990).

At trial, Sherman presented videotaped depositions of three expert medical witnesses. In chambers before trial, the judge informed the parties that she had a prior commitment that precluded her from being present in the courtroom during the first video presentation. Neither party objected and the court instructed the jury as follows:

This will be the testimony of Dr. Dale Dardis. Ladies and gentlemen, this will be a video tape deposition. In other words, Dr. Dardis will be testifying by means of a video tape. A couple things I wanted to tell you about this. I have reviewed the transcript already and ruled on objections. There may be some short brief periods where there is not going to be any sound and you shouldn't worry that that is a malfunction of any kind. That is where I have ruled on an objection. When the tape is completed then that will be it for the day and so you will be excused. We will be in recess until tomorrow morning and I will ask you to be back tomorrow morning at 9:00 and we will go until noon and start up again at 1:30 and we will go until about 4:30. I am not going to sit here through all of this because I have already read the deposition. All right, thank you.

The following morning, the judge again left the courtroom during the second medical expert's video testimony. Sherman's attorney introduced the third medical expert. The court then stated:

All right, this tape will run about an hour and 40 minutes and as soon as that tape is over we will take a break for lunch until about 2:00.

The judge left the courtroom. The trial resumed the following morning. The deposition of Marden's expert, Dr. Zondel Miller, was read into the record. The trial judge remained present in the courtroom. Dr. Miller testified that he had consulted with Dr. Kisspert who agreed that Sherman's CAT scan showed a bulging disc. The court overruled Sherman's objection that this testimony was inadmissible hearsay.

Post-trial, the court denied Sherman's motion for a new trial, disagreeing that Marden's expert's testimony constituted inadmissible hearsay. The court found that the testimony was corroborative and "was not submitted to prove the truth of the matter asserted."

The court also refused to grant a new trial on the basis of her absence from the courtroom because neither party objected and because Sherman had demonstrated no prejudice, bias, or deprivation of the right to a fair trial. The court reasoned that the outcome of the trial would not have likely changed had the deposition evidence been presented differently. Sherman appeals.

## ISSUES

1. Did the trial court improperly allow a medical expert to recount a corroborative medical opinion regarding the interpretation of appellant's CAT scan?

2. Does a trial judge's absence from the courtroom during videotaped deposition testimony constitute an irregularity in the proceeding serious enough to warrant a new trial?

## ANALYSIS

1. A trial court has wide latitude in determining whether there is sufficient foundation upon which an expert may state an opinion. Even if this court would have reached a different conclusion as to the sufficiency of the foundation, the decision of the trial judge will not be reversed absent clear abuse of discretion.

*Benson v. Northern Gopher Enters.*, 455 N.W.2d 444, 446 (Minn.1990) (citation omitted). The burden of proving "[e]ntitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error." *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990).

■ Sherman claims that the trial court erred in allowing Marden's expert, Dr. Miller, to testify that another neuroradiologist, Dr. Kisspert, agreed with Miller's interpretation of Sherman's CAT scan. The Minnesota Rules of Evidence provide that "[u]nderlying expert data must be independently admissible in order to be received upon direct examination." Minn.R.Evid. 703(b). Nonetheless, "when good cause is shown in civil cases and the underlying data is particularly trustworthy, the court may admit the [expert] data * * * for the limited purpose of showing the basis for the expert's opinion." *Id.* We conclude that although Dr. Kisspert's opinion was hearsay, it was nonetheless admissible under Minn.R.Evid. 703(b). Dr. Miller stated that he consulted with Dr. Kisspert after he had formed his own opinion. Dr. Kisspert's opinion merely corroborated the basis for Dr. Miller's opinion.

■ Even if the trial court had improperly allowed Dr. Kisspert's testimony, the error is harmless. *State v. Glidden,* 455 N.W.2d 744, 747 (Minn.1990) (error is harmless where no reasonable likelihood that error substantially affected the verdict). Dr. Kisspert's opinion was not used to bolster the critical trial issue regarding the permanency of Sherman's injury. Rather Dr. Miller testified only that Dr. Kisspert agreed with his interpretation of Sherman's CAT scan that showed a "bulging disc at the level in the mid cervical spine between C5 and C6." Considering the limited basis upon which the court allowed Dr. Kisspert's testimony, we cannot conclude that any prejudice resulted or that the jury would have returned a different verdict.

2. A new trial may be granted upon the showing of an "irregularity in the proceedings of the court * * * or any order or abuse of discretion, whereby the moving party was deprived of a fair trial." Minn.R.Civ.P. 59.01(a). Whether a trial court erred in denying a motion for a new trial depends on whether the "denial involved a violation of a clear legal right or a manifest abuse of judicial discretion." *Rogers v. Ponti–Peterson Post No. 1720,* 495 N.W.2d 897, 901–02 (Minn.App.1993); *see also Uselman,* 464 N.W.2d at 139 (holding that the court's "primary consideration is whether any claimed misconduct is so serious that it denies litigants a fair trial.").

■ We agree that a judge who "absents" herself/himself from the courtroom creates an irregularity in the proceeding. *In re Begley's Estate,* 178 Minn. 141, 142, 226 N.W. 404, 404 (1929) (irregularity is a "want of adherence to some prescribed rule or method of proceeding."). On appeal, however, this court must determine whether the party waived its right to complain of an irregularity by failing to object at trial. *Rogers,* 495 N.W.2d at 902.

Sherman concedes the lack of objection to the court's absence but argues that objections are not necessary where the error "appears to be inexcusable and of such serious and prejudicial consequence as to deny the litigants a fair trial." *Wild v. Rarig,* 302 Minn. 419, 434, 234 N.W.2d 775, 786 (1975). For support, Sherman relies on *Scott v. Angie's Inc.,* 153 Mich.App. 652, 396 N.W.2d 429 (1986). While *Scott* is factually similar to the instant case, *Scott* is also distinguishable in two crucial ways. First, *Scott's* counsel objected vigorously to the judge's announcement that he would not remain in the courtroom during the reading of deposition testimony. *Id.* 396 N.W.2d at 430. The court overruled these objections and instructed the jury to accord the same weight and credibility to the deposition testimony as they would if the judge had remained in the courtroom. *Id.* at 430–31. Second, the Michigan Legislature has expressly provided that

[w]henever the judge of any circuit or superior court fails to attend a court session, the court shall stand adjourned until a judge authorized to hold court is in attendance.

*Id.* at 431 (citing Mich.Comp.Laws § 600.1501(3) (1986); Mich.St.Ann. § 27A.1501(3) (West 1986)). Thus, with an objection on the record and a legislative "mandate," the *Scott* court reversed and remanded for a new trial, stating that

the possibility of prejudice inuring due to the judge's absence from the bench during the greater portion of plaintiff's case is too great to be condoned.

396 N.W.2d at 434.[1]

While *Scott* is persuasive, the holding is also contrary to the majority view. Most jurisdictions agree that "the defect created by the judge's absence from the courtroom is waived where the complaining party either consented in advance before the judge's departure or failed to raise any objection to the judge's absence." *Scott*, 396 N.W.2d at 432 (citing J.J. Director, Annotation, *Absence of Judge from Courtroom During Trial of Civil Case*, 25 A.L.R.3d 637 (1969)).

■ Minnesota follows the majority view. In *Wild v. Rarig*, the Minnesota Supreme Court stated:

*Unless the misconduct is so flagrant as to require the trial court to act on its own motion,* which is rarely the situation, * * * in order to raise the claim of misconduct there must be an objection at the time of the alleged misconduct, or at the close of the argument when it has been taken down by the reporter, and before the jury retires; also a request for corrective action and the failure of the court to act. A party is not permitted to remain silent, gamble on the outcome, and, having lost, then for the first time claim misconduct in opposing counsel's argument.

302 Minn. at 433, 234 N.W.2d at 786 (quoting *Patton v. Minneapolis St. Ry. Co.*, 247 Minn. 368, 375, 77 N.W.2d 433, 438 (1956)) (citations omitted) (emphasis in original). Not having objected, Sherman's claim may only succeed through proof that the misconduct was so "outrageously flagrant that the trial court should act on its own motion" and grant a new trial. *Schwartz v. Consolidated Freightways Corp.*, 306 Minn. 564, 565, 237 N.W.2d 385, 386 (1975). While it is true that a judge who, with or without objection, leaves the courtroom while court continues in session demonstrates poor judgment, here the judge's absence was not so egregiously prejudicial as to deny Sherman a fair trial. *See Uselman*, 464 N.W.2d at 139. Moreover, the record contains no clear evidence that the outcome of the trial would have been different if the judge had remained in the courtroom through the videotaped depositions.

But Sherman claims that an error is prejudicial, requiring reversal, if there is a reasonable prospect that another trial might result differently. *Church of Immaculate Conception v. Curtis*, 130 Minn. 111, 120, 153 N.W. 259, 262 (1915). Sherman thus asserts that the court's "apparent attitude toward critical testimony might have prejudiced Appellant's rights." We are not persuaded and will not impute any innuendo to the court's statement. Sherman's argument also ignores the fact that the judge counterbalanced her absence by properly instructing the jury regarding its consideration of deposition testimony, in addition to explaining that she has "sanitized" the deposition testimony. The jury instruction and judicial comment was adequate.

### DECISION

The trial court did not err by allowing a medical expert to state the basis for his opinion. A party who fails to object and who

---

1. The dissent maintained that the majority's holding skirted Michigan's general rule that the complaining party must show that prejudice occurred because of the judge's absence. *Scott*, 396 N.W.2d at 436 (Danhof, J., dissenting). In *Scott*, Chief Judge Danhof noted that the judge ruled on the objections before the deposition was presented to the jury, sanitized the deposition, and cautioned the jury appropriately. *Id.* More- over, the court was absent approximately three and a half hours out of a four-day trial, a comparatively short time period. *Id.* The dissent concluded that the judge's absence was not prejudicial and thus not reversible error. *Id.* The dissent suggested that the subject of a trial judge's absence was best left to the Michigan Supreme Court to address by court rule. *Id.*

cannot demonstrate prejudice may not complain that a trial judge's absence from the courtroom warranted a new trial.

**Affirmed.**