Sharon Lynn BLACKWELL, Appellant,

v.

2002 KIA 4 DOOR STL SEDAN with Vehicle Identification Number KNAFB121225129540, License Plate: JAR 987, Respondent.

No. CX–03–395.

Court of Appeals of Minnesota.

Oct. 14, 2003.

Thomas A. Volk, Chaska, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Antonio Tejeda, Timothy J. Simonson, Jon C. Saunders, Anderson, Larson, Hanson & Saunders P.L.L.P., Willmar, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge; HALBROOKS, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Appellant challenges the forfeiture of her vehicle, arguing that her mother, who loaned appellant money to purchase the vehicle, has a bona fide security interest in the vehicle. Because the evidence does not support a conclusion that appellant's mother has a bona fide security interest in appellant's vehicle, we affirm.

## FACTS

On July 1, 2002, appellant Sharon Lynn Blackwell was arrested for driving under the influence of alcohol. After her arrest, the state served appellant with a notice of intent to forfeit the 2002 Kia 4-door STL Sedan ("the car") she was driving at the time, as mandated by Minn.Stat. § 169A.63, subd. 6 (2002). The statute provides that a "motor vehicle is subject to forfeiture . . . if it was used in the commission of a designated offense." A designated offense includes a violation of section 169A.20, the driving-while-impaired statute. Minn.Stat. § 169A.63, subd. 1(d)(1) (2002). Appellant filed a petition for judicial determination of forfeiture of motor vehicle under Minn.Stat. § 169A.63, subd. 8(f) (2002). Appellant claimed that the forfeiture of her vehicle was unlawful, or at least subject to a private security interest because appellant's mother, Onetta Viera, had loaned appellant money to purchase the motor vehicle, but Viera had not been served with a notice of forfeiture.

Nevertheless, Viera learned of the impending forfeiture, and at a judicial review hearing Viera testified that she paid $9,500 toward the purchase price of the vehicle while appellant paid the remaining amount. Viera also testified that she and appellant orally agreed the money was a loan and that appellant would repay the loan at a 6% interest rate. Viera produced a copy of a payment schedule created from what appears to be an amortization schedule for mortgage payments that Viera obtained from the Internet. Also entered into evidence were four cancelled checks with Viera as the payee and signed by appellant. Each check noted on the memo line that it was payment for the car loan. Viera testified she was unaware that in order to perfect her interest in the vehicle, she was required to register that interest with the State of Minnesota. Because Viera's name does not appear on the vehicle's title, respondent did not know of her interest in it, and accordingly did not serve her with the notice of forfeiture.

Appellant was subsequently convicted of driving while impaired and first-degree driving while impaired. The district court upheld the forfeiture of appellant's vehicle. The district court concluded that the forfeiture statute did not require that Viera be notified of the forfeiture because Viera's name does not appear on the vehicle's title. This appeal follows.

## ISSUE

Does appellant's mother have a bona fide security interest in the vehicle under Minn.Stat. § 169A.63, subd. 7, in the absence of any evidence that the motor vehicle was collateral for the loan?

## ANALYSIS

Appellant argues that the district court misinterpreted the forfeiture statute and erroneously concluded that appellant's mother does not have a bona fide security interest in appellant's vehicle. We note that the district court did not explicitly rule that Viera does not have a security interest in appellant's vehicle. But implicit in its conclusion that the state was not required to notify Viera of the forfeiture is a determination that Viera does not have a bona fide security interest in appellant's vehicle. Significantly, neither party appeals the district court's notice ruling. Thus, the sole issue before us is whether Viera has a bona fide security interest in appellant's vehicle within the meaning of the forfeiture statute, thereby precluding seizure of the vehicle by the state.

Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn. 1998). When reviewing a district court's

findings of fact, this court may not set such findings aside unless they are clearly erroneous. *Rife v. One 1987 Chevrolet Cavalier,* 485 N.W.2d 318, 321 (Minn.App. 1992), *review denied* (Minn. June 30, 1992). This court independently reviews the application of law to a given set of facts. *A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

A vehicle is subject to forfeiture if the driver is convicted of the designated offense on which the forfeiture is based. Minn.Stat. § 169A.63, subd. 7(a)(1) (2002). "A vehicle encumbered by a bona fide security interest ... is subject to the interest of the secured party ... unless the party ... had knowledge of or consented to the act upon which the forfeiture is based." Minn.Stat. § 169A.63, subd. 7(b) (2002). Appellant was convicted of driving while impaired and second-degree driving while impaired, and therefore her vehicle was clearly subject to forfeiture. It is less clear whether Viera has a bona fide security interest in the vehicle. To answer that question, we are guided by our recent decision in *Stanton v. Mazda 2001,* 660 N.W.2d 137 (Minn.App.2003).

In *Stanton,* granddaughter was stopped and arrested for driving under the influence of alcohol, which represented her third such violation in ten years. *Stanton,* 660 N.W.2d at 138. Granddaughter was served with a notice of intent to forfeit the Mazda that she was driving at the time, as mandated by section 169A.63, subd. 6. *Id.* Stanton filed a petition for judicial determination of forfeiture, claiming she had a bona fide security interest in the vehicle. *Id.* at 139. Stanton had co-signed the automobile loan for her granddaughter,

and the loan was guaranteed by Stanton's savings account. *Id.* at 138.

We concluded that a bona fide security interest in a vehicle under section 169A.63, subdivision 7, does not require that the interest be "perfected" pursuant to Minn. Stat. § 168A.17 (2002).[1] *Id.* at 140. We reasoned that section 169A.63, subdivision 7, only mandates that there be a "bona fide security interest," not a "perfected security interest" or even a "security interest." *Id.* at 139–40. We noted that the plain meaning of the phrase "bona fide," as defined by this court, means "made in good faith without fraud or deceit," or "in or with good faith; honestly, openly, and sincerely ... real, actual, genuine, and not feigned." *Id.* at 139 (quoting *Rogers v. Ponti–Peterson Post No. 1720,* 495 N.W.2d 897, 901 (Minn.App.1993) (citations omitted)). We concluded that Stanton had a bona fide security interest in the Mazda because the granddaughter had sent Stanton a letter confirming that it was collateral for the loan. *Id.* at 139. We also noted that Stanton had presented an affidavit in which she stated that the Mazda was collateral for the granddaughter's loan thus showing that Stanton had a bona fide security interest in it. *Id.*

Appellant argues that the facts here are similar to those in *Stanton,* and establish that Viera has a bona fide security in appellant's vehicle. Appellant contends that Viera's testimony at the hearing as to her interest in the vehicle, the payment schedule, and the cancelled checks evidencing appellant's repayment of the loan, establishes Viera's interest in the car. The state counters that Viera does not have a security interest in appellant's vehicle because a security interest in another's property requires a security agreement,

---

**1.** Minn.Stat. § 168A.17, subd. 1 (2002), provides, "a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or secured parties of the vehicle unless perfected...."

and there is no security agreement in this case. The state relies on the definitions of a "security agreement," a "security interest," and a "secured party" in Chapter 168A.

■ But the state's attempt to link the forfeiture statute with chapter 168A (Motor Vehicle Titles) is exactly the approach we rejected in *Stanton.* We reasoned in *Stanton* that the forfeiture statute provides for an interest in a vehicle even if the security interest is not perfected in accordance with section 168A.17. In so concluding, we noted that by using the phrase "bona fide," the legislature intended that something less than a perfected security interest would suffice under the forfeiture statute. *Stanton,* 660 N.W.2d at 140. Therefore, it follows that under *Stanton,* a bona fide security interest under the forfeiture statute can exist in absence of an actual security agreement. Further, *Stanton* makes clear that a security interest, within the meaning of the forfeiture statute, is determined by the facts presented in each case and not by statutory requirements or definitions.

■ The state also contends that the facts in this case do not support a conclusion that Viera has a bona fide security interest in the car. The state argues that, unlike Stanton, Viera did not guarantee the loan with her savings account; the appellant did not write a letter pledging the motor vehicle as collateral for the loan; and neither party presented any evidence that appellant's vehicle served as collateral for the loan. We find the state's position here persuasive.

The district court was presented with an amortization schedule of payments that does not indicate what the payments are for, who is responsible for making the payments, or to whom the payments should be made. Viera testified that she loaned appellant $9,500 to purchase a vehicle. In the record are cancelled checks naming Viera as payee in the amount that appears in the monthly payment schedule. It is reasonably clear that the payment schedule relates to appellant's repayment of the $9,500 loan made by Viera. But our analysis does not end here, because we must still decide whether this evidence establishes that Viera has a bona fide security interest in appellant's vehicle. We conclude that it does not.

In *Stanton,* we defined the phrase "bona fide" as "made in good faith without fraud or deceit." But we tied "good faith" to the clear evidence in that case that the vehicle served as collateral for the loan. In addition to the fact that Stanton co-signed the installment loan, the granddaughter sent Stanton a letter confirming that the vehicle was collateral for the loan. *Stanton,* 660 N.W.2d at 139. Stanton also presented an affidavit in which she stated that the vehicle was collateral for the granddaughter's loan, thus demonstrating that Stanton had a bona fide security interest in the vehicle. *Id.*

■ Here, no such documentation exists. The payment schedule and cancelled checks connect Viera to the loan, but not to the car. We cannot reasonably infer from this evidence that the car served as collateral for the loan, and that in the event of default by appellant, Viera was entitled to possession. Viera certainly has an interest in repayment of the loan made to appellant for the vehicle's purchase, but we hold that the evidence is insufficient to support a conclusion that Viera has a bona fide security interest in appellant's vehicle.[2] We acknowledge that there was

---

2. The district court did not address whether Viera had a bona fide security interest under

*Stanton;* basing its holding instead on the fact that respondent had no statutory obligation to

nothing fraudulent about Viera's loan to appellant and that our holding today is a harsh result. But to hold otherwise would unwisely expand *Stanton*—something we decline to do where neither Viera nor appellant took any steps to pledge the motor vehicle as collateral for the loan, thus demonstrating a secured interest in the motor vehicle.

## DECISION

In the absence of any evidence that appellant's vehicle served as collateral for the loan, appellant's mother did not have a bona fide security interest in the 2002 Kia.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. On these facts, this case should be reversed outright and a bona fide security interest declared in appellant's mother, Onetta Viera. This case, as the majority agrees, is governed by *Stanton v. Mazda* 2001, 660 N.W.2d 137 (Minn.App.2003). In *Stanto* n, her granddaughter was arrested for DUI and served with a notice of intent to forfeit her vehicle, a 2001 Mazda. That is the same as our facts, only we are dealing with Viera's daughter, Sharon Blackwell, rather than a granddaughter. In *Stanton*, Stanton appeared by an affidavit, stating that the Mazda was collateral for her granddaughter's loan. Stanton also had evidence that she had guaranteed her granddaughter's loan with her savings account and she had a letter from her granddaughter pledging the Mazda as collateral.

In this case, the district court had as unchallenged evidence, an amortization schedule of payments that as to amounts

and dates and times exactly correlated with Viera's *in-court* testimony that she loaned Blackwell $9,500 to purchase the 2002 Kia. (Oral argument revealed that the total purchase price was between $11,000 and $12,000.) In the record are cancelled checks naming Viera as payee in the exact amount needed to comply with the monthly payment schedule (five years/60 months). Blackwell's checks to her mother were numbered one through four with each check noting that *it was a payment for the car loan.* Appellant's counsel claims that these facts are even stronger than the facts in *Stanton.* I do not know if that is the case. But I can only observe that the undisputed facts in *Stanton* and in this case do not show a dime's worth of difference in terms of documentation of record to support an unperfected bona fide security interest.

The district judge did not have the benefit of *Stanton,* so the trial judge went off on a non sequitur, as the majority acknowledges. The trial judge opined that since this was an unperfected security agreement and, therefore, no formal notice was sent to Onetta Viera, that Onetta Viera's claim must fail for that reason.

In its "Findings of Fact, Conclusions of Law, Order and Judgment," the district court stated in Findings of Fact VI, "Ms. Viera was not served with notice of this proceeding." The court then went on in its Conclusion of Law No. 4 to state,

"For those vehicles required to be registered under chapter 168, the notification to a person known to have a security interest in the vehicle is required only if the vehicle is registered under chapter 168 and the interest is listed on the

notify Viera of the forfeiture proceeding because Viera's interest was not registered pursuant to Minn.Stat. Ch. 168. We will not, however, reverse on appeal a correct decision simply because it is based on incorrect rea-

sons. *Wolf Motor Co. v. One 2000 Ford F-350,* 658 N.W.2d 900, 903 n. 3 (Minn.App. 2003); *Katz v. Katz,* 408 N.W.2d 835, 839 (Minn.1987).

vehicle's title." Minn.Stat. § 169A.63, subd. 8(b). Thus, the requirements of the notification statute have been satisfied because Onetta Viera's claim to the car in question does not appear on the car's title.

The court used this as a basis to deny Viera's claim.

The issue of lack of notice to Mrs. Viera is a nonissue. Neither party raised it, and both parties at the oral hearing agreed that notice was not an issue. Appellant did not argue that his client had improperly not been sent a notice of the hearing (she learned about it in another way and made an appearance and was allowed by the court to give her full testimony) and respondent does not argue that since she did not get a formal notice, she is estopped from presenting a claim. Rather, after agreeing that lack of notice was not an issue, both sides simply argued the merits.

The majority concedes that the district court missed the whole point of *Stanton* and points out that the state's attempt to link the forfeiture statute with chapter 168A "is exactly the approach we rejected in *Stanton.*" The majority acknowledges that under *Stanton* you need only a bona fide security interest, not a perfected security interest or even a "security interest." It simply has to be "in good faith." The majority attempts to distinguish *Stanton* and deprive Viera of her security interest, arguing that in *Stanton,* there was a letter and an affidavit both indicating that the word "collateral" was used, whereas on our facts, although the written documentation points exactly to a car loan (and the state does not challenge that), the magic words "collateral" do not appear in the Blackwell/Viera documents. It is true that if Blackwell and Viera had had an attorney draft the car loan, all the right buzz words would likely have been used; the loan documents might even have been recorded,

thus, making this entire case moot. But this court wrote *Stanton* for exactly that reason! There are times when close friends and family members loan each other money for vehicles and *Stanton* made it clear that you don't need any particular magic words or any particular recording or any particular essential document; rather the package of evidence needs only to indicate a good faith security interest—and as stated, something less than a perfected security interest.

To accept the majority's reasoning, the following hypothetical has to be assumed. After making her four payments religiously, and noting on each check either "car payment" or "car note," first, second, third, and fourth, Blackwell gets tired of the car and sells it to someone for about what she paid for it, meaning several hundred dollars over the $8,951 balance she owed her mother, Mrs. Viera. Blackwell keeps the entire purchase price and goes to her mother and says, "Gee, Mom, I sold my Kia for $11,000. I am going to keep the entire amount and not pay you off. The way I see it, you just made me a personal loan totally unrelated to the car. We never had any understanding that the car was collateral for what I owe you. I will simply string out the balance for another 46 months at the amortization schedule rate of $183 per month."

Onetta Viera says, "You know, daughter, come to think of it, you are right. Even though you put car payment number 1, number 2, number 3, and number 4 on the first four $183 checks, and that is exactly the payment schedule we agreed upon, it really never was our intent that the car was to be collateral, and I just meant to give you an out-of-pocket loan for your own personal use for the next five years. So you go ahead and keep the money, and just string out the payments over the next four years and eight months."

Unless you believe that was really the intent of Blackwell and Viera, you cannot distinguish this case from *Stanton.* The *Stanton* explanation of the term "bona fide" carries the not indirect, but direct implication that buzz words and magic words are not needed as long as the totality of the evidence points to a bona fide interest.

Part of appellant's evidence of record, copies of the four cancelled checks, are telling. They make it undisputedly clear that Viera's loan to Blackwell was not just a generic personal loan, but was a loan for the car.

> The check ($183) dated March 19, 2002 has written on it, "# 1 car payment;" the check ($184) dated May 13, 2002 has written on it, "2nd car note;" the check ($208) dated June 10, 2002 has written on it "car note—cash;" and the check (183) dated July 15, 2002 has written on it "4th car payment."

Some time prior to June 10, Blackwell had borrowed $25 from her mother and used the third check to pay that $25 personal loan back plus a regular $183 car payment. She was careful to put on the memo portion of the check, "car note—cash." If this was really just a personal loan and not tied to the car, why did Blackwell make it a point to spell out both "car note" and "cash" when she deviated upward from the payment schedule in the amount of $25?

The majority states that the result is "harsh." I agree! Then why are we going against the rules of law surrounding forfeitures and penal statutes? The law is settled that penal statutes are construed strictly *against the state* and in favor of the defendant. *See State v. Serstock,* 402 N.W.2d 514, 516 (Minn.1987) (citation omitted) (stating that where doubt exists as to legislative intent of a penal statute, doubt must be resolved in favor of the

defendant). With the government getting completely out of hand on forfeitures several years ago, the United Stated Supreme Court stepped in and starting with *Austin v. U.S.,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) pointed out that excessive "civil forfeitures" can and will run afoul of the U.S. Constitution when the government gets greedy. The case expressly pointed out that the Eighth Amendment is not limited to criminal cases. *Austin,* 509 U.S. at 602, 113 S.Ct. at 2802. In addition to that law, this punishment by forfeiture goes not against Stanton, admittedly guilty of DUI, but against an *innocent third party,* her mother. Viera stands in the same shoes as any bona fide lender, e.g., a bank or GMAC. They have no control over the driver's actions and no responsibility for the driver's actions. There is already sufficient punishment laid on Blackwell because she will lose her own equity in the car in addition to being subject to the severe penalties for multiple DUIs.

In sum, we are today artificially narrowing our own case, *Stanton v. Mazda,* the only precedent out there, and we are artificially limiting *Stanton,* not to help somebody, but to affect a harsh forfeiture on an innocent third party. This is all done in the face of the rule that penal statutes are to be construed strictly against the state and in favor of the defendant. This is not a good result. We are going against the law and the facts to visit a harsh result on an innocent third party—why? We are doing it in a case where the district court did not have the benefit of *Stanton* and so decided the case against Blackwell on a nonissue, the lack of entitlement by Onetta Viera to a formal written notice.

I dissent, and would reverse outright in favor of Blackwell so that Viera's unpaid

car loan is recognized and the only forfeiture is Blackwell's equity. At a minimum, I would reverse and remand to the district court to reconsider the facts and the law in light of our holding in *Stanton*.