# STATE OF MICHIGAN

# COURT OF APPEALS

SALLY KRANZ,

        Plaintiff-Appellant,

and

BRETT STAMATS and AMY J. STAMATS,

        Plaintiffs,

v

ROGER D. TERRILL and DARLENE G. TERRILL,

        Defendants-Appellees.

UNPUBLISHED
August 6, 2015

No. 319287
Lenawee Circuit Court
LC No. 10-003817-CH

Before: M. J. KELLY, P.J., and WILDER and K. F. KELLY, JJ.

M. J. KELLY, P.J. (*dissenting*).

        I concur with the majority's analysis of the claim by plaintiff, Sally Kranz, concerning the law of the case doctrine; for the reasons stated by the majority, I would vacate the trial court's judgment to the extent that it might be read to provide that defendants, Roger D. Terrill and Darlene G. Terrill (collectively, the Terrills), had an express right to erect and use the dock at issue. However, I disagree with the majority's decision to reverse and remand for entry of a judgment in favor of Kranz. I do not believe that this Court has the authority to substitute its own findings for those of the trial court sitting as the finder-of-fact on the sole basis of a disagreement with the trial court's assessment of the weight and credibility to be afforded the evidence. Rather, where the evidence adduced at trial supports the trial court's findings, this Court must affirm—and we must do so even if we conclude that we would not have reached the same result had we been sitting as the finder-of-fact. Because a reasonable view of the evidence supports the trial court's findings, I would affirm the trial court's decision to reaffirm that portion of its original judgment granting a prescriptive right to erect and use a dock to the Terrills.

-1-

# I. BASIC FACTS

Kranz owns property on Round Lake in Lenawee County, Michigan, which is commonly known as Lot 1 of the Shady Beach plat. The Stamats own Lot 2, which is immediately northwest of Lot 1 on the lake. Kranz' predecessor in interest owned Lot 1 along with four back lots that did not have access to the lake. Kranz' predecessor in interest conveyed the four back lots—including Lot A—with a ten-foot wide easement across the northwestern end of Lot 1 in order to provide those lots with lake access. The Terrills purchased Lot A in 2000. There is evidence that the previous owners of the four back lots mutually agreed to erect, maintain, and use a dock at the end of the easement over Lot 1 and did so for decades, which use the Terrills continued after they purchased Lot A.

In July 2010, Kranz and the Stamats sued the Terrills to stop them from maintaining a dock at the end of the easement. The Terrills then counter-sued Kranz for injunctive relief; specifically, they alleged that they and their predecessors in interest had established a prescriptive right to continue to maintain a dock at the end of the easement and moor boats. The primary issue for trial was whether the Terrills and their predecessor in interest's erection and use of the dock were with permission. The parties submitted documentary evidence and numerous affidavits in support of their respective positions and later stipulated that the trial court could try the claims on that record. The trial court found that the owners of the back lots had "continuously used the easement including the dock for more than fifteen years and that such use was open, notorious, and adverse." Accordingly, it determined that the Terrills had established a prescriptive right to maintain and use a dock at the end of the easement and entered a judgment to that effect.

In the prior appeal,[1] this Court stated that the record evidence supported the trial court's findings underlying its determination that the Terrills had established a prescriptive right to erect and maintain the dock and moor boats. The Court, therefore, affirmed the trial court's judgment granting the Terrills a prescriptive right to use the end of the easement to erect and maintain a dock and moor boats.

Kranz appealed to our Supreme Court and it vacated "those portions of the Court of Appeals and Lenawee Circuit Court judgments holding that the [Terrills] established a prescriptive easement to construct and maintain a dock at the terminus of the easement, and to moor boats to the dock." *Kranz v Terrill*, 494 Mich 860; 831 NW2d 238 (2013). The Court ordered a remand to the trial court "for further consideration" in light of an affidavit by Kranz' predecessor in interest, Evelyn M. Hummon. *Id.* In her affidavit, Hummon stated that any use of the dock by the back lot owners over the years that she owned Lot 1 was with her permission. Our Supreme Court instructed the trial court to reconsider its decision in light of Hummon's affidavit and case law establishing that use with permission is not hostile.

---

[1] *Kranz v Terrill*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2012 (Docket No. 305198).

In November 2013, the trial court held a hearing to reconsider its decision as instructed by our Supreme Court. At the hearing, the trial court stated that, although it was not clear from its original opinion, it had considered the Hummon affidavit. It gave the affidavit no consideration, however, because the affiant merely stated a conclusion:

> The problem that I have with the affidavit is the fact that it simply states a conclusion. It says that the dock or boat moorings or the easement was done with our permission and consent. That in the Court's opinion is like saying I held it by adverse possession. If the – if the Terrills had filed an affidavit saying that we held it by adverse possession, that's all they said in their affidavit without averring facts to back that up, the Court would have given that no consideration.

The court explained that the absence of any facts to flesh out whether the back lot owners erected and maintained the dock with the affiant's permission made it impossible for the court to *believe* the affiant: "In this particular case simply saying that it was done with our permission and consent isn't sufficient for this Court to believe that that in fact is the case." Rather, the court stated, the affiant should have provided facts to flesh out the circumstances under which the affiant allegedly gave permission. By way of example, the court related, the affiant did not "say that each and every year that the people came to put their dock out they asked us if we could do it and we gave them our permission . . . ." In the absence of such factual statements, the trial court concluded that the affidavit provided almost no help in resolving the factual dispute. Because it found the affidavit incredible, even after further consideration, the trial court determined that it would "affirm" its prior decision. The trial court entered an opinion and order affirming "its prior decision that the [Terrills] have an express and prescriptive easement" as described in the original judgment on the same day.

## II. ANALYSIS

On appeal, Kranz maintains that our Supreme Court required the trial court to find that Hummon's affidavit was credible and established that the Terrill's predecessor's use was permissive. "It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court." *Rodriguez v Gen Motors Corp*, 204 Mich App 509, 514; 516 NW2d 105 (1994). A trial court may only take such actions on remand as are consistent with the true intent and meaning of the appellate court's judgment. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008).

Our Supreme Court did not determine that the trial court clearly erred in its findings; it vacated the trial court's judgment and remanded for "further consideration" of the evidence in light of Hummon's affidavit. *Kranz*, 494 Mich at 860. That is, for whatever reason, it asked the court to reconsider its findings and decision in light of a specific affidavit and case law, which is precisely what the trial court did. Nothing in the Supreme Court's remand order required the trial court to give particular weight to Hummon's averments. If the Supreme Court wished to direct the trial court to an ultimate conclusion on a particular issue, it could have done so. See, e.g., *Cole v Henry Ford Health Sys*, 497 Mich 881; 854 NW2d 717 (2014). The Supreme Court's directive was not ambiguous and only required the trial court to *consider* Hummon's affidavit before again making its findings and rendering its decision. The trial court sufficiently

-3-

complied with the Supreme Court's directive by providing a written opinion explaining its reasons for disregarding Hummon's affidavit.

Kranz also argued that the trial court erred when it determined that the Terrills established a prescriptive right to erect a dock and moor boats at the end of the easement. The burden of proving the existence of a prescriptive easement lies with the party claiming the easement. *Widmayer v Leonard*, 422 Mich 280, 290; 373 NW2d 538 (1985). However, once the party claiming the easement presents evidence that it had used the disputed land for the statutory period, the burden of producing evidence shifts to the other party to prove that its use was permissive. *Id*. At issue here is whether the Terrills established a prescriptive easement through open, notorious, adverse or hostile, and continuous use of the easement for a period of 15 years. *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010); MCL 600.5801(4). "Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder [for trespassing]." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 681; 619 NW2d 725 (2000) (quotation marks and citations omitted, brackets in original). A permissive use of property, regardless of the length of time, will not result in an easement by prescription, *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995), and periods of permissive use cannot be tacked on to a period of hostile occupancy in order to establish a prescriptive easement, *Fractional School Dist No 9 in Waterford and Pontiac Twps, Oakland Cty v Beardslee*, 248 Mich 112, 116; 226 NW 867 (1929).

The Terrills averred that when they purchased their property from Rickey Lee Wobrock, their immediate predecessor in interest, he told them that the dock was theirs and that it was their responsibility to install it each season. Further, from 2000 to 2010, the Terrills claimed to have installed the dock and moored their boats to it without ever asking for permission. Thus, there was evidence to support a finding that the Terrills had used the easement and dock in a way that was hostile for 10 years. Because this was less than the statutory period, in order to prevail, the Terrills had to establish that Wobrock also used the dock in a manner that was hostile. See *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001).

Wobrock averred that the dock was placed at the end of the easement for the eight years he owned the property, though its placement and use was the result of mutual agreement between four different property owners: Wobrock, Roy Brown, Tom Bourgeois, "[a]nd someone known as 'Brownie'." He also stated that he used the dock and moored boats to the dock. Moreover, although he did not specifically state that he used the dock under color of right and did not make a claim of adverse possession, there was ample evidence to support a finding that Wobrock's use was hostile. Wobrock averred that he placed and used the dock with the "mutual agreement" of the four users, who owned back lots and did not include Hummon or her husband or Kranz. In support of their claims, the Terrills submitted affidavits by Bourgeois and Brownie, among others.

Bourgeois averred that he purchased one of the back lots from his mother's estate in 2009 and was familiar with his mother's use of the easement since 1969. He stated that he and his mother before him used the dock on the belief that the dock was "our dock" and that they were "entitled to place and use this dock." He also averred that it was his belief that no one had the right to restrict his or his mother's use of the dock.

Aaron "Brownie" Brown averred that he purchased a back lot in 1966 and owned it until he sold it to the Stamats in 2006. Like Bourgeois, Brown averred that he used the dock under color of right and stated that he did not ask for permission from the owners of Lots 1 and 2; indeed, he stated that a prior owner of Lot 1 tried to give him "a hard time regarding the dock" and he responded that the "dock was ours."

When Wobrock's affidavit is considered in light of the other affidavits and especially those of the other back lot owners, the trial court could reasonably find that Wobrock's use of the dock was also done without permission. Wobrock never stated that he used the dock with the permission of the owner of the servient estate—Lot 1—he averred that he used the dock by mutual agreement with the other *back lot* owners. Two of those owners specifically averred that they used the dock by right and without permission. For that reason, Wobrock's affidavit could be read to be consistent with either Kranz' version of events or with that of the back lot owners. Examining the record as a whole and especially in light of Wobrock's apparent agreement with the other back lot owners, the trial court could find that Wobrock used the dock without permission and as a matter of perceived right.

On appeal, Kranz makes much of the fact that Hummon averred that "any use of a dock or boat moorings on or at the easement was done with our permission and consent." However, as the trial court aptly noted, this averment was not accompanied by specific facts that would shed light on what Hummon meant and did not establish a direct conflict with the averments by the other affiants. Moreover, even if there were a conflict, it bears emphasizing that the parties stipulated to allow the trial court to try the issue on the evidentiary submissions and affidavits. As such, the trial court had the authority to judge Hummon's credibility on the face of her averments and assign them whatever weight it chose—or no weight at all—in making its findings. *Widmayer*, 422 Mich at 290 (noting that it was for the finder of fact to "weigh the evidence submitted by the parties regarding adverse and permissive use").

It is also of no moment that the trial court may have mischaracterized Hummon's averment as a mere legal conclusion. Admittedly, one might plausibly infer from Hummon's averment that she intended it to be understood as a statement that she gave permission to anyone and everyone who used the dock, but one might also infer from this averment that she merely acquiesced—that is, gave unexpressed consent—to the use. As the finder of fact, the trial court was required to make the necessary inferences, resolve any conflicts in the evidence, and make a determination on the basis of its inferences and resolutions. *Id.*; MCR 2.613(C). And the trial court found Hummon's averment concerning her permission and consent to be unworthy of belief. Given that her version directly contradicted the averments by two back lot owners and did not include specific details that might clarify the circumstances surrounding her purported consent, the trial court was well within its rights to disregard her affidavit as self-serving and incredible. And this Court should not second-guess the trial court's assessment of the weight and credibility to be assigned to Hummon's averment. *Dep't of Community Health v Risch*, 274

Mich App 365, 375; 733 NW2d 403 (2007). On this record, I would conclude—as the previous panel of this Court already did—that there was sufficient evidence to support the trial court's findings and ultimate determination that the Terrills established a prescriptive right to use the dock and moor boats consistent with their prior practice. See *Fera v Village Plaza, Inc*, 396 Mich 639, 648; 242 NW2d 372 (1976) (stating that reviewing courts must uphold a judgment unless the factual record "is so clear that reasonable minds may not disagree").[2]

Finally, Kranz contends the trial court failed to follow the portion of this Court's prior opinion remanding the case to establish the rights and responsibilities of the parties regarding their relationship as fee holder and easement holders. In its prior opinion, this Court remanded the case "to the trial court for clarification of [Kranz'] rights and responsibilities as the fee owner and the [Terrills'] rights and responsibilities as the easement holders following any related proceedings deemed necessary."[3] The trial court's opinion and order after remand contains no such discussion and the Supreme Court's subsequent order only vacated the portion of that opinion pertaining to the discussion of prescriptive easements. *Kranz*, 494 Mich at 860. Because the trial court's opinion and order provides no clarification of the parties' rights, I would remand this case to the trial court for a determination of the parties' respective rights.

I would affirm in part, vacate in part, and remanded for further proceedings consistent with this opinion.

/s/ Michael J. Kelly

---

[2] I do not agree that this Court may substitute its own findings for that of the trial court simply because the testimony at issue was in the form of affidavits. Had the parties relied on depositions that were read into the record, the trial court would similarly have had no special opportunity to judge credibility. Nevertheless, this Court would still treat the depositions as testimony made in open court. See *Scott v Angie's, Inc*, 153 Mich App 652, 661; 396 NW2d 429 (1986) (stating that testimony introduced at trial by deposition shall have the same force and weight as testimony in open court). Kranz stipulated to the method for trying the case and should not now be heard to argue that the trial court had no authority to disregard the affidavit.

[3] *Kranz*, slip op at 8.